In re OGLES.

Ex parte TROUNSTINE et al.

(District Court, W. D. Tennessee. March 23, 1899.)

No. 2.

1. BANKRUPTCY—PETITION—MULTIFARIOUSNESS.

A petition in involuntary bankruptcy, which unites with a prayer for an adjudication against the debtor a prayer for a provisional seizure of his property by the marshal, and a prayer for an injunction forbidding certain attaching creditors and a receiver of a state court to dispose of property of the alleged bankrupt in their hands, is multifarious.

2. SAME—INFORMALITY—AMENDMENT.

A petition in bankruptcy, under the act of 1898, filed before the promulgation of the official forms by the supreme court, should not be dismissed for want of conformity thereto; but the court will order a new petition, in the form prescribed, to be filed nunc pro tunc, the original petition, however, not to be withdrawn from the files.

3. SAME—JURISDICTION—INJUNCTION AGAINST ATTACHING CREDITORS.

Attaching creditors of an alleged bankrupt, and a receiver of his property appointed at their instance by a state court, do not become amenable to the control of the bankruptcy court by the mere filing of the petition against the debtor, though it is therein charged that they have received an unlawful preference; and if they are not regularly made parties to the petition and served with process, and have not voluntarily appeared thereto, the court cannot issue an injunction forbidding them to dispose of property of the alleged bankrupt in their hands, held and claimed by them adversely to the debtor and to the petitioning creditors.

4. SAME.

Where a petition in involuntary bankruptcy charged that certain creditors of the alleged bankrupt had gained an unlawful preference by attachments upon his property, and had procured the appointment of a receiver by a state court, who had sold the property and held the proceeds, and prayed for an injunction against such creditors and the receiver, forbidding them to take proceedings in the state court for the distribution of

the fund so held, but it was not shown that such creditors were insolvent, or that, for any other reason, a suit against them by the trustee in bankruptcy, subsequently to be appointed, would not be an adequate remedy for the avoidance of the alleged preference and the recovery of its fruits, quære whether the injunction should not be refused, and the parties left to work out their rights through the trustee when appointed.

## In Bankruptcy. On application for injunction.

This petition for involuntary bankruptcy was filed on the 8th of November, 1898. The acts of bankruptcy alleged to have been committed within the four months next preceding the filing of the petition are thus stated: "(1) Being insolvent, and while insolvent he did convey, transfer, and remove, or cause to be sold and removed and disposed of, a large part of his property, to wit, the said merchandise owned by him, and kept at his store, with an attempt to hinder, delay, or defeat his creditors, and particularly your petitioners. (2) The said J. F. Ogles, during the early part of October, 1898, and about the time he made the purchases of goods hereinbefore stated, of your petitioners, purchased large quantities of goods from other merchants, namely: [The names of the sellers of the goods are here mentioned.] These goods and merchandise were purchased by the said J. F. Ogles at the usual market prices, and taken to his store in Benton county, Tennessee, and thereupon he immediately began to sell the same at greatly less than their value, and to dispose of the same with the intent and for the fraudulent purpose of converting the same into money and defeating and defrauding his creditors." The petition then states that certain creditors, who are named, on the 25th day of October, 1898, filed bills of attachment in the chancery court of Benton county, Tenn., against Ogles, whereby they caused to be attached the stock of goods which had been recently purchased from the attaching creditors and the petitioning creditors in bankruptcy. It alleges that the grounds of attachment were that Ogles "was fraudulently conveying, selling, removing, and disposing of his said property, with the intent to hinder, delay, or defraud his creditors, said complainants and others"; that writs of attachment were issued and levied, and that by subsequent orders of the chancery court a receiver, one D. G. Hudson, was duly qualified, and is now in possession of the goods, acting in pursuance of the orders and under the directions of that court; that the receiver had advertised the stock of merchandise for sale to the highest bidder, for cash, on the 12th day of November, 1898, and would proceed to sell the same. The petition then proceeds to say: "Wherefore your petitioners say that within the last four months, namely, on the dates hereinbefore mentioned, the said J. F. Ogles did commit an act of bankruptcy in suffering and permitting, while insolvent, the said creditors to obtain a preference through said legal proceedings, and not having, at least five days before the said date of sale or disposition of the property, vacated or discharged such preferences. Petitioners say that the said J. F. Ogles is wholly insolvent, and that all his property is not sufficient, at a fair valuation, to pay his debts, and that all his property, including the said property so disposed of by him, is wholly insufficient for such purpose." "(3) Petitioners further show that, within the period of four months before the filing of this petition, the said J. F. Ogles sold and conveyed a certain tract of land, of the value of two thousand dollars, at and for the price of one thousand dollars in cash, and that he sold and conveyed the same, it being lands in Benton county, Tennessee, with the intent to convert the same into money, and to conceal and to hide the said money, to defeat and defraud his creditors." The petition is in the form somewhat of a bill or petition in equity, and, besides the above allegations as to the acts of bankruptcy, it sets out the amount and the character of the debts, respectively, of the petitioning creditors, and alleges that the goods were purchased by the alleged bankrupt from these creditors, as above stated. It then states that Ogles is a merchant in Benton county, and the jurisdictional facts in reference to the amount of his debts, etc. The allegations of the petition are not separated into the technical forms required for stating the acts of bankruptcy, but relate the facts, along with others concerning the conduct of the bankrupt, his attaching creditors, and the receiver, in the manner indicated by the above quotations from the petition. It then prays as follows: "Wherefore your peti-

tioners pray that the said J. F. Ogles may be declared a bankrupt, and that a warrant may be issued to take possession of said J. F. Ogles' estate, that the same may be distributed according to law, and that such other proceedings may be had thereon as the law in such cases prescribed. And your petitioners further pray that meanwhile the said J. F. Ogles be restrained and enjoined from disposing of, or in any manner interfering with, the said property, and that an order be issued to the marshal of said district requiring him to take possession, provisionally, of all the property, books, and effects of the said debtor, J. F. Ogles, and safely keep the same until the further order of the court, and that in the meanwhile the said Warren, Neely & Co. and the other creditors aforesaid, and the said D. G. Hudson, receiver, be restrained and enjoined from disposing of said bankrupt stock." The petition is verified by the separate oaths of the petitioning creditors.

To this petition the alleged bankrupt, on the 28th day of November, filed an answer in the usual form of an answer in chancery. He admits that he owes debts to an amount exceeding the sum of $3,000; that the petitioning creditors have correctly set forth the nature of their respective demands; that he was merchandising at the time and place stated, and that the goods, wares, and merchandise alleged to have been sold to him by the petitioners were so sold at his request; and that he is in no way related to the petitioners. He denies that, while insolvent, he did convey, transfer, and remove, or cause to be conveyed, removed, and disposed of, a large part of his property, to wit, the said merchandise owned and kept by him at the store, "with an intent to hinder and delay or defeat his creditors, and particularly the petitioners." He then states that he has been merchandising in Benton county for over two years, and that while it may be true that, within the past four months next before the filing of the petition, he could not have paid all of his indebtedness out of his property, yet he denies that he sold, transferred, or caused to be sold or removed and disposed of, the merchandise owned by him at his store, except in due course of trade. He admits that he was selling and disposing of them in due course of trade during the time, but he denies that there was any attempt to hinder, delay, or defeat his creditors. He admits that he disposed of some of the goods at less than their cost value, but alleges that it is equally true that he disposed of other portions of the goods at more than their cost. He admits that he bought goods in October last from the parties named in the petition, and supposes that he bought them at the usual market prices, but denies that he immediately began to sell the same at greatly less than their value, with the intent to defraud his creditors. He admits that, after a few of his creditors began to press him for money, he did sell a few of the articles at greatly less than their value; and admits that on the 25th of October, 1898, the attaching creditors named seized his goods by attachment in the chancery court of Benton county. He admits that the petition correctly states the grounds of the attachment alleged in the bill, and that Hudson was appointed receiver of the goods, and had advertised the stock of goods for sale. He denies that he either suffered or permitted the creditors to obtain preferences by their legal proceedings, if it is meant by the said allegation that he consented thereto. He admits that he did not discharge the attachments before the sale of the property, and that he is now wholly insolvent, and that all his property is not sufficient, at a fair valuation, to pay his debts. He denies that, within a period of four months before the filing of his petition, he sold and conveyed a certain tract of land in Benton county, of the value of $2,000, for the price of $1,000. He admits that within this period he did sell and convey a tract of land in the county for $1,075 in cash to one Smothers, and says that the said consideration was the full value of the land. He explains that the tract of land conveyed to Smothers was a portion of a tract which he owned with his brother, as tenant in common, which they had purchased for the sum of $2,000, and that after the purchase they divided the land into two equal parts; that about two years ago he sold a small part of his share to his brother for $125, and afterwards the remaining portion, as before stated, to Smothers, for $1,075. He denies that he sold the land with any intent to convert the same into money, for the purpose of defeating or defrauding his creditors. He then claims the exemptions that are to be allowed him by the bankrupt law, in the event he is adjudicated a bankrupt.

On the 16th of March, 1899, an affidavit was filed and presented as the basis of an application for an injunction. It is the affidavit of W. B. Dowell, who states that he is the agent of Trounstine Bros. & Co., one of the petitioning creditors. He sets out the fact of the filing of the petition in bankruptcy against Ogles, refers to it, and adopts its statements in support of the application for injunction. The affidavit states that the attaching creditors mentioned in the bankruptcy petition obtained an order for the sale of the goods attached in that case since the petition in bankruptcy was filed; that the goods have been sold by the receiver, Hudson; and that he now has the proceeds in his hands, subject to the orders of the court of which he is receiver. It states that the court will convene on the 20th of March, and that he is informed and believes that the attaching creditors will then apply for a distribution of the proceeds to them according to their rights, respectively, unless restrained by the order of this court. It states that he is informed and believes that Ogles has no other property than the merchandise above mentioned, except the small interest in the real estate mentioned in the petition, and that, if the distribution in the chancery court takes place, the proceeds of the stock of merchandise "rightfully distributable among his creditors, under the bankruptcy law, will have been disposed of and put beyond the reach of the court." The affiant states that he makes the affidavit to the end that the attaching creditors named therein "may be enjoined from taking any other or further proceedings in the said cause in the chancery court of Benton county, looking to a distribution of said fund, until the further orders of this court." The affiant further states that on the 4th of March, 1899, he personally delivered a true copy of the notice attached to the affidavit, marked "Exhibit No. 1," and made a part thereof. That notice informs the attaching creditors that the petitioning creditors in bankruptcy will apply to this court on the 16th day of March, 1899, for a writ of injunction restraining and enjoining the receiver, Hudson, appointed by the chancery court, from distributing the proceeds of the sale of the stock of goods attached, and to enjoin the attaching creditors themselves, and each and every one of them, from further prosecuting the said cause, or obtaining therein any order or decree for the distribution of said proceeds among themselves, until the further order of the bankruptcy court. The petitioning creditors appeared on the day named in the notice, and moved for an injunction according to the prayer of the affidavit and original petition in bankruptcy. The attaching creditors have not appeared to make any defense to this application.

Hays & Biggs, for petitioners.

HAMMOND, J. (after stating the facts as above). Obviously, this petition is multifarious. It unites with a prayer for an adjudication in bankruptcy against the debtor, which alone it should contain, a prayer for a seizure by the marshal, provisionally, of all the property, books, and effects of the debtor, and also a further prayer for an injunction against the attaching creditors and the receiver of the state court. It is subject to all of the infirmities in pleading and practice suggested by this court in Re Kelly, 91 Fed. 504. But as there is no application at this time for any warrant of seizure of the bankrupt's property, it is not necessary further to scrutinize the proceedings in regard to that prayer of the petition.

The petition should be dismissed for the defect of multifariousness, were it not for the fact that it was filed before the supreme court had promulgated the general orders and forms in bankruptcy now in force. The bankruptcy statute of 1898 permitted petitions to be filed after four months from the passage of the act, but since the supreme court had not regulated the practice, as required by the statute, necessarily parties and their counsel were left to such forms of pleading as they might adopt. This petition follows the analo-

gies of the bill in chancery, though it might have found a more appropriate analogy in the form prescribed for a creditors' petition under the bankruptcy statute of 1867 (Form No. 54, Act 1867; Bump, Bankr. 933). The provisions for warrants of seizure, under the statute of 1898, are somewhat different from those of 1867, but with that exception the form and prayer of the petition by creditors might be substantially the same under either act. It is my opinion that, under the circumstances, the courts should retain the informal petitions, however defective, that were filed before the promulgation of the general orders in bankruptcy and the forms regulating the practice by the supreme court, but that the pleadings necessarily should now, by amendment, be conformed to the practice prescribed by the supreme court. Therefore this petition should be remodeled to follow Form No. 3, prescribed by the supreme court for a creditors' petition in a case of involuntary bankruptcy, and it is so ordered in this case. And it will be observed that, according to that form, the only prayer of the petition is that "service of this petition with a subpœna may be made upon (the alleged bankrupt) as provided in the acts of congress relating to bankruptcy and that he may be adjudged by the court to be a bankrupt within the purview of said acts." All other prayers in this petition extraneous to Form No. 3 are foreign to the purpose of an involuntary petition in bankruptcy, and should therefore be eliminated. It is intended by congress that the practice in bankruptcy should be uniform under the rules prescribed by the supreme court, and there can be no departure from them, except as allowed by Gen. Ord. 37. Similarly, and for the same reasons, the answer of the alleged bankrupt is informal and unknown to the practice; and it is ordered that it shall be remodeled, and made to conform to the "Denial in Bankruptcy" prescribed by Form No. 6 of the supreme court rules in bankruptcy, under the statute of 1898. But neither the petition nor the answer thereto should be withdrawn from the files, the parties having a right that the record shall remain intact in respect of that. But the clerk will enter an order and serve notice thereof upon the parties and their counsel, requiring them to reform their pleadings according to this opinion. Of course, the new pleadings should be filed as of the same date as the original pleadings, to save the rights of the parties already accrued. In strict practice, all the multifarious matter in this petition should be disregarded as nugatory; but, as it was filed before the promulgation of the rules of the supreme court in bankruptcy, I am of the opinion that the parties should not lose the benefit of such proceedings as have been taken without a knowledge of what forms in practice would be prescribed by the supreme court. Therefore I have determined that this petition shall stand, as to such multifarious matter, as an independent petition, seeking the relief asked for; and that the original petition and answer and the affidavit just filed shall have the same effect as if the same matter had been pleaded in point of law, as it should have been, as a proceeding in bankruptcy supplemental to the creditors' petition for an involuntary adjudication.

So taken, how does the case stand upon this application for an

injunction? The fifth amendment to the constitution of the United States provides that "no person shall be deprived of life, liberty or property without due process of law"; imposing the same limitation upon congress in respect of this that is imposed by the fourteenth amendment upon legislation by the states. Neither the attaching creditors in the state court, nor the receiver of that court, who is alleged by this petition and affidavit to hold the property in controversy, have been made parties to this petition, nor has any process been prayed against them as such. Neither has any been issued or served, although they are named in the petition, in the progress of the recitals therein. The petition is purely one against the alleged bankrupt, and there is no manifestation of an intention to make the attaching creditors of the receiver parties to that proceeding, except that it may be that it was in the mind of the pleader that the attaching creditors and the receivers became amenable, ipso facto, to the control of the court upon the filing of the involuntary petition against the debtor. This, to my mind, is wholly untenable, and finds no warrant in any of the provisions of the bankruptcy statute. It is contemplated by several provisions of the statute that creditors, other than petitioning creditors, may become formal parties to the proceedings in bankruptcy, either before or after the adjudication, and, in some respects, they are bound whether they become formal parties or not, as, for example, in the matter of the bankrupt's discharge. But by section 59, subsecs. f, g, St. 1898, it is specifically provided that outside creditors may come in to join as plaintiffs in the petition for adjudication, or to "file an answer and be heard in opposition to the prayer of the petition." Therefore, unless these attaching creditors have voluntarily appeared to contest the petition or to join as plaintiffs in it, they have not, in any sense, become parties to the bankruptcy proceedings qua proceedings in bankruptcy. Now, it is a familiar rule of law that one holding property or claiming rights adversely to another, no matter how, must have a day in court, by proper process, upon appropriate proceedings for that purpose, or he cannot be said to have been subjected to the power of the courts "by due process of law." The attaching creditors and the receiver, as is shown by the averments of this petition, are holding and claiming adversely to the alleged bankrupt and his other creditors. It is plain, therefore, that they cannot be deprived of their right to this property, whatever it be, nor any claim they have to it, except upon plenary proceedings for that purpose, to which they have been made parties by process issuing from a court having jurisdiction of the subject-matter, and the authority to bring them in to answer whatever adverse claim may be set up against them.

This petition, in its present form, is not such a proceeding. No process has been issued upon it against the attaching creditors, and they are therefore not bound to take any notice of it for the purpose of answering this application for an injunction. Even if, upon a proper proceeding filed in this court, they could be provisionally enjoined from proceeding with the attachment suit, as prayed for in this petition and application for an injunction, when they had been

by due process made parties thereto, without that, it seems to me, they cannot be so enjoined.

The case does not stand in any better attitude in respect of this fatal defect upon the affidavit of Dowell, the agent for the petitioning creditors. That affidavit, like the original petition, proceeds upon the erroneous assumption that these creditors and the receiver are parties to the bankruptcy proceeding and are already amenable thereto. But this, as we have endeavored to show, cannot be true. Therefore the notice served upon the attaching creditors and annexed to the affidavit is nugatory. Not being parties to any proceeding or served with any process, the attaching creditors were not bound to appear in response to that notice, and defend this application for an injunction. They and their receiver can only be called to do that by an independent proceeding for that purpose, upon which proper process has been issued from the court. Besides, if this petition could be treated as one making the attaching creditors and their receiver parties thereto, and could be considered independently as a bill for injunction and relief, then, under our practice as regulated by statute and the rules of equity prescribed by the supreme court, the notice of the application for an injunction, to be binding, must be issued from the court itself, and not by the parties. Rev. St. §§ 716, 718, 719. Equity Rule No. 55. For this reason, if for no other, the notice to the attaching creditors of this application, as annexed to the affidavit, cannot be considered as "due process of law," or as having been issued according to the practice of the court. Apart, therefore, from all other considerations, the fact that the attaching creditors and their receiver have not had legal notice, and have not been made parties to any bill or petition upon which an application for an injunction might be founded, is sufficient for the denial of the application as now made.

If the above-mentioned objections were out of the way, it is very doubtful whether an injunction should be granted upon a proper application for that purpose. It does not appear by anything stated, either in the original petition or the affidavit, that the remedy provided for recovery of the property illegally obtained as a preference, through a suit by the trustee against the preferred creditor, would not be adequate in this case. If the conditions prescribed in section 60 of the bankruptcy statute of 1898, and subsection 3 of section 3, exist, the trustee, by proper suit in a court of competent jurisdiction, as declared in the statute itself, may recover whatever amount the preferred creditors have received by way of preference, or he may recover from such preferred creditors the value of the property which they have attached; and, possibly, he might do this against the creditors in solido, or against any one for the value of goods seized by the writ, as against joint trespassers; and upon common-law right, either of the bankrupt or his own creditors, if they had reasonable cause to know that they were committing a fraud upon the bankrupt statute by the seizure of the bankrupt's effects and obstructing their administration in the bankruptcy court. It might be remedial as a conversion of the goods, wherefore the remedy at law would be adequate. Rev. St. § 720.

The affidavit avers that, unless restrained by this court, the proceeds of the sale of the goods will be paid over to said attaching creditors, and that in that event those rightfully distributable among the creditors under the bankruptcy law will have been disposed of and put beyond the reach of the court. But, surely, the trustee can pursue the preferred creditors by proper suits in courts of competent jurisdiction, wherever they may be, and therefore the property is not beyond the reach of the remedies prescribed for its recovery by the bankruptcy statute itself. There is no allegation that these creditors are insolvent, and unable to respond to the suit of the trustee for whatever judgment he may obtain against them, and, in the absence of such a condition of insolvency, it may be doubtful whether the bankruptcy court, or any other court of competent jurisdiction, would enjoin the attachment suit; more particularly is it doubtful whether a federal court should issue such an injunction against parties proceeding in the state court to pursue whatever remedies they think they have under the state laws. The issuing of an injunction is largely a matter of discretion in the court, and is not a matter of strict right; and under our dual system of government, guided by the provisions of the Revised Statutes (section 720), prohibiting the federal courts from enjoining proceedings at law in the state courts, they should, in doubtful cases, and even in many cases where it might be technically lawful to issue the injunction, decline to issue it from motives of public policy, especially where the complaining parties have provided for them such a remedy as that which is given by section 60 of the bankruptcy statute of 1898.

Again, it is very doubtful whether the allegations of this petition in relation to the attachment proceedings constitute an act of bankruptcy, under subsection 3 of section 3 of the bankruptcy statute of 1898. There is no allegation of consent by the alleged bankrupt to that proceeding, or of any aiding or abetting him, or of collusion or conspiracy between him and the attaching creditors, to have it instituted, nor any allegation of any act or conduct by the bankrupt, or by the attaching creditors, from which such consent, collusion, or permission could be implied. There is not alleged in the petition or affidavit even any slight circumstance which would tend to show the existence of any affirmative desire on the part of the alleged bankrupt to give a preference to these attaching creditors through the legal proceedings which they have taken. The only allegation in the petition or the affidavit is that he suffered or permitted the proceedings to be taken, but no fact or circumstance or conduct of his own, or that of the creditors, is alleged, in support of that allegation. It is the bare expression of an opinion on the part of the petitioning creditors, using, parrot-like, the language of the statute, and not in any way showing to the court, by the real facts concerning the proceedings, anything that would indicate that the bankrupt, in any sound sense of the phrase, had suffered or permitted those proceedings to be taken. Ordinarily, in the nature of such proceedings, they are in invitum and hostile. It is not to be presumed, in the absence of any averments or proof to the contrary,

93 F.—28

that a debtor would consent to a suit charging as a foundation for the attachment that he was "fraudulently conveying, selling, and removing and disposing of his property with the intent to hinder, delay, and defraud his creditors," as is stated in this petition were the grounds of the attachment. At all events, it is not at all certain that an allegation, using only the language of the bankruptcy statute, "that he suffered or permitted, while insolvent, a creditor to obtain a preference through legal proceedings," is a sufficient pleading of the fact, without accompanying averments showing what the debtor did which constituted the suffering or permitting denounced by the statute. It is the facts the court should know, and not the conclusion which the pleader draws from them; and it is notice of the facts relied upon to which the alleged bankrupt is entitled, and not mere conclusions of fact, which the petitioning creditors' may choose to entertain.

It was decided by the supreme court in the case of Wilson v. Bank, 17 Wall. 473, under the bankruptcy statute of 1867, which was more liberal to creditors and comprehensive on this subject than the bankruptcy statute of 1898, that the mere passive nonresistence by an insolvent debtor to the suit brought was not sufficient to establish the fact that he had "procured" or "suffered" his property to be taken on legal process. The language of the present statute is "suffered" or "permitted," which cannot, in my judgment, be interpreted as any more restrictive or prohibitive upon the alleged bankrupt than the words of the former statute construed by the supreme court in the above-cited case. "Procured" is a stronger word than "permitted," to be sure, but the latter word does not any more imply passiveness than the word "suffered," and, in the above-cited case, the supreme court construed "suffering" and "procuring" as meaning substantially the same thing. And in Bank v. Warren, 96 U. S. 539, the supreme court again say that "mere nonresistance of the debtor to judicial proceedings against him, when the debt is due and there is no defense to it, is not the suffering or giving a preference, under the bankrupt act"; and in that case, as in this, there was not proof of a single fact or circumstance tending to show a concurrence or aid on the part of the debtor in obtaining the judgment or procuring the payment of the debt. In this case there is no averment in the pleadings of such inculpatory conduct.

There are other acts of bankruptcy charged in the petition which may be sufficient to support it, even if the one just construed is not, and they possibly may be sufficient to secure the adjudication asked for against the insolvent debtor; in which event the right of the trustee, under sections 60 and 67 of the bankruptcy statute of 1898, would also subsist and afford a sufficient remedy to recover the property, if the attachment may be avoided and set aside under the bankruptcy statute. But the question we have here is whether or not it is necessary, provisionally, to enjoin that suit, and arrest a distribution of the proceeds, in order to protect the rights of all the creditors under the bankruptcy administration, if an adjudication shall be had. And its solution depends, as before indicated, more upon the necessity for such a proceeding than upon the effect of the

bankruptcy statute upon the liens which have been procured by the attaching creditors in the proceedings of the state court.

If the necessity for it be doubtful, and it appears that the creditors, through their trustee when appointed, will have a sufficiently adequate and fairly hopeful remedy to recover the property, the injunction should not be granted. It must be remembered that this is not like the cases now being decided almost every day in the bankruptcy courts, in which it is held that, where a creditor has made a general assignment for the benefit of his creditors, and they have gone into the state courts for the purpose of administering that assignment, according to the insolvency laws of the states, the bankruptcy statute has superseded and supplanted the insolvency laws of the state and their administration in the state courts, and has, in its effect, transferred the exclusive administration of the assets of the bankrupt to the bankruptcy court. In such cases, it is always proper to enjoin the receiver or other administrator of the state court, and to compel him, by proper process, to transfer the property of the bankrupt to the bankruptcy trustee, when appointed, and to compel the creditors in the state proceedings to transfer their applications for their share of the estate to the bankruptcy court, according to the provisions in that behalf found in the bankruptcy statute. In re Gutwillig, 90 Fed. 475, 481; In re Bruss-Ritter Co., Id. 651; Lea v. West Co., 91 Fed. 237; In re Sievers, Id. 366, which, however, was not the case of an assignee or receiver holding property under the orders of the state court, but a voluntary assignee, proceeding himself to administer the trust.

This right to enjoin the receiver or assignee of the state-court proceeding to administer the property of the alleged bankrupt was sustained in the case of Blake v. Francis-Valentine Co., 89 Fed. 691, in a suit in the state court not involving a general assignment for the benefit of creditors, but only a collusive attachment of the property for the purpose of giving a preference. Indeed, in that case, no involuntary petition in bankruptcy had been filed, and was only contemplated by the creditors, who filed a bill in the bankruptcy court, preliminary to their proposed proceedings in bankruptcy, to enjoin the sheriff from selling the attached property under the orders of the state court. Jurisdiction of the bankruptcy court to thus provisionally preserve the property until bankruptcy proceedings could be instituted, and a trustee appointed, was sustained by the court in that case. In Re Brown, 91 Fed. 358, proceedings in the state court were enjoined in a case where a receiver had been appointed in a suit to set aside a fraudulent conveyance of property, the fraudulent grantee having, however, in that case, voluntarily restored the title to the grantor against whom the petition in bankruptcy had been filed. The last two cited cases would indicate that the principle of transferring the administration of the assets from the state court, already in possession, to the bankruptcy court, extends to cases of attachment such as this, but there are obvious discriminations between the facts in those cases and those we have here.

In Blake v. Francis-Valentine Co., supra, there were averments that would induce any court of equity having jurisdiction of the parties to do just what was done in that case, upon the general grounds of equitable relief shown by the facts. That the equity powers of the court of bankruptcy were resorted to is only incidental in reference to the jurisdiction of that court to do what was done. If any state court of equity, or, if the jurisdiction otherwise existing, if any federal court of equity, had had possession of the same bill and the same facts, the same decree made in that case would have been made by the courts of general equity jurisdiction. If such a bill had averred that the plaintiffs were for some reason obstructed or delayed in the filing of their involuntary petition in bankruptcy and procuring an adjudication thereof; that the defendants had entered into a fraudulent conspiracy and collusion to secure a prior custody and a speedy sale of the property through other judicial process; had proceeded to the point that they had obtained an order of sale, which was about to be executed; that such proceedings were in fraud of the bankruptcy statute, the parties intending thereby to secure an unlawful preference; and that the plaintiffs would be irreparably injured unless the defendants were stayed in the prosecution of their suit until the plaintiffs could exercise the right and secure the benefits given to them by that statute through proceedings in bankruptcy,—it does seem to me that any court of equity would have restrained the fraudulent conspiracy until the plaintiffs could resort to the bankruptcy court. It is the ordinary course of giving equitable relief against fraudulent conspiracies which, unless restrained, would result in irreparable injury. There is no such allegation of fraudulent combination and conspiracy in this case, and no such appeal to the general authority of a court of equity, but the case proceeds upon the simple notion that, by the act of bankruptcy itself and the filing of the petition in bankruptcy, all controversies and litigation about the bankrupt's property have been, ipso facto, transferred to the bankruptcy court.

The report in Re Brown, supra, is somewhat obscure as to the exact conditions in that case, but the fact appears that the conveyance which had been attacked as fraudulent by proceedings in the state court, during which a receiver had been appointed, was cured by a reconveyance of the property, by which reconveyance, the opinion states, it became a part of the bankrupt's estate, to be administered as such. It does not appear that, without that reconveyance, the bankruptcy court would have interfered.

I do not desire to be understood as holding that under no circumstances will the bankruptcy court interfere with the possession of the res by the state court, where, under attachment proceedings or other forms of litigation, the property has been seized by process from the state court. It depends altogether upon the circumstances of each case. As was said by Judge Waddill in Lea v. West Co., supra:

"There are many matters in which the state and federal courts can proceed in harmony under the bankruptcy act, and which the bankruptcy court should

leave to the determination of the state court, and as far as possible it will be the policy of this court to do so. But, in a case like the present one, I do not see how the two courts can proceed harmoniously. The litigation in each court involves the administration of the entire estate of the bankrupt. One court or the other must proceed. * * * Indeed, in these cases, the question is more one of discretion than of jurisdiction."

While the bankruptcy statute has superseded the state insolvency laws and their administration of the bankrupt's property in the state courts, it has not abrogated the attachment laws of the state; and where diligent creditors have, in good faith, resorted to those laws, and the state court has taken custody of the property, and is proceeding to exercise its jurisdiction in that behalf, it does not follow that, necessarily, the commencement of bankruptcy proceedings arrests and defeats the jurisdiction of the state court to proceed with its administration of the particular property attached. Such cases are different from those above cited of a general assignment, in which the state court has possession of the property only through and by virtue of the act of bankruptcy itself, to wit, a general assignment for the benefit of creditors. Bankr. St. 1898, § 3, subsec. 4. The lien of the attachment may be avoided by the adjudication in bankruptcy, but, notwithstanding this, I think that ordinarily the creditors must be left to the remedies given to the trustee for avoiding and setting aside such liens.

I wish to repeat here what was said in Re Kelly, supra, that it is a mistaken view to suppose that the bankruptcy statute has, by its own force, gathered into the jurisdiction of the bankruptcy court, as such, all property held adversely to the bankrupt by third parties, but as to which the creditors claim that it belongs to them by reason of fraudulent preferences, fraudulent conveyances, and the like. It was well settled, under the bankruptcy statute of 1867, that the jurisdiction conferred upon the federal courts for the benefit of the assignee in bankruptcy was concurrent with, and did not devest the state courts of, suits of which they already had full cognizance. Eyster v. Gaff, 91 U. S. 521. The federal court has exclusive jurisdiction of proceedings in bankruptcy, strictly so called, and of the property of the bankrupt; but where the property is adversely claimed as against the bankrupt and his assignee or trustee in bankruptcy the jurisdiction of the state and federal courts is concurrent. Rev. St. §§ 711–716; Claflin v. Houseman, 93 U. S. 130. The assignee or trustee often may be forced, and ordinarily should go, into the state court, and become a party to suits there pending, for such relief as he requires to protect his interests. Pending the appointment of an assignee or trustee, and in cases of contested adjudication, it sometimes may be necessary to resort to the bankruptcy court to stay the proceedings in the state court until that contest is decided and a trustee appointed; but such injunctions depend upon the particular circumstances of each case, and, in my judgment, where it appears that the trustee, when appointed, will have an ample remedy to recover the property affected or its value, that comity which governs the federal and the state courts in their relation to each other should operate to withhold any injunction except in cases of imperative necessity. Through like comity, no

doubt, if not as a matter of strict right, upon proper application by the petitioning creditors in bankruptcy in a proper case, the state court would stay its own proceedings a reasonable time, until the bankruptcy petition could be heard, and a trustee appointed, who could come into that court to be made a party, and assert his rights in the premises, and it is only after a refusal to do this that the bankruptcy court ordinarily should interfere. But, even then, the refusal to stay the proceedings could be corrected by error or appeal as a federal right denied, and, to avoid unnecessary and unseemly conflict between courts of co-ordinate jurisdiction, but diverse authority, that would be the preferable remedy. The application for an injunction must be denied.