ROSS–MEEHAM FOUNDRY CO. et al. v. SOUTHERN CAR & FOUNDRY CO.

(District Court, W. D. Tennessee.   July 21, 1903.)

No. 2,327.

1. BANKRUPTCY—POWER OF COURTS—APPOINTMENT OF RECEIVER.
   A District Court of the United States will not appoint a receiver for the property of an alleged bankrupt on a summary application therefor, by parties to a petition in bankruptcy filed in another district, without such notice to the persons in possession and those otherwise interested as will answer the requirement of due process of law of the Constitution of the United States; such a proceeding is not authorized by the bankruptcy act, and if it were the provision would be of doubtful constitutionality.

2. SAME—DISPOSSESSING OFFICERS OF STATE COURT.
   A court of the United States will not dispossess the receiver or other officers of a state court by any summary order or process or otherwise than by formal proceedings taken by its own receiver or trustee for that purpose.   Bankruptcy courts are governed by this rule, the same as others, in the exercise of their jurisdiction, and will not interfere with the possession of a state court until after the application, at least, to that court by the trustee or receiver of the bankruptcy court for a surrender of the possession to him, and the refusal of the state court, unwarrantably, to recognize the jurisdiction and authority in bankruptcy.

3. SAME—ANCILLARY JURISDICTION—APPOINTMENT OF RECEIVER.
   The bankruptcy act does not vest courts of bankruptcy with ancillary jurisdiction to appoint receivers for the property of a debtor against whom a petition in involuntary bankruptcy has been filed in another district.   Upon an adjudication the title to all the bankrupt's property, wherever situated, vests in his trustee, who must proceed to obtain possession like any other owner, and by regular proceedings in courts having jurisdiction, if the property is held adversely.   The powers of a receiver pendente lite, appointed before adjudication in that respect, are not defined by the act, but it would seem that he can act only according to the rights and remedies given to ordinary receivers.   In any case neither a receiver nor trustee can proceed in another district without making proper parties, obtaining and serving proper process, and filing proper pleadings.

In Bankruptcy.   On petition for appointment of ancillary receiver.

HAMMOND, J.   On Saturday last I received the following telegram:

"Chattanooga, Tenn., July 18, 1903.

"Hon. E. S. Hammond, Memphis, Tenn.   Bankruptcy petition against Southern Car and Foundry Co. filed in this district 4–45 July seventeenth receiver appointed by Judge Clark Nine forty five this morning Ancillary petition for your court will be mailed from here tonight.

"Henry O. Ewing, Clerk."

Yesterday in due course of mail I received the following letter:

"Chattanooga, Tenn., July 18, 1903.

"Hon. E. S. Hammond, Judge U. S. Court, Memphis, Tenn.   Dear Sir:   We send you herewith papers in the matter of the appointment of an ancillary receiver for the Southern Car & Foundry Company, about which Mr. Ewing, Clerk of the United States Court for this District, wired you this morning. We trust you will make the order submitted, which conforms to the order made by Judge Clark in the main case here.   Of course we are not disposed to ask you to appoint Mr. Hurlbut ancillary receiver if in your judgment some one in Memphis could better preserve the property for the interest of

all parties. We only think it might be more convenient to have the same re-ceiver for all the property in Tennessee.        Yours very truly,
                                       "[Signed]      Williams & Lancaster."

In reply to these communications the clerk was directed to send the following telegram:

"Memphis, July 19, 1903.

"Williams & Lancaster, Attys., 412 Temple Court, Chattanooga, Tennessee. Judge Hammond will not enter any orders except on notice to parties in in-terest and motion in open court. Papers held till you arrive.

                                       "Dan F. Elliotte, D. C."

Also to-day the following letter was sent by mail:

"Memphis, Tenn., July 20, 1903.

"Messrs. Williams & Lancaster, 412 Temple Court, Chattanooga, Tennessee. Gentlemen: I received your letter with the petition and order therein en-closed yesterday and on Saturday received from Mr. Ewing, the clerk, the telegram to which your letter refers. You are already advised by the tele-gram I directed the clerk to send you that I must decline to enter the order except upon notice to the parties interested and upon motion in the open court. And I am now dictating an opinion explaining and justifying this action by the court which will be filed with the clerk during the day. For your information I may say that local lawyers have notified me before and since the telegram from Mr. Ewing that they desired to be informed if any proceedings were taken in this court; also that I have learned from the lawyers and from the newspapers here that the property of the company is already in the hands of the officials of the state courts. Of course, you will recognize at once that under such conditions as these, if for no other reason, it would be improper to comply with your request to enter the order which you send.        Yours very truly,                [Signed]   E. S. Hammond."

The petition inclosed in this correspondence is entitled, "In the District Court of the United States for the Western Division for the Western District of Tennessee, in Bankruptcy"; is addressed to the judge of the court, and states that the petitioners, three in number, are creditors of the Southern Car & Foundry Company; that on the 17th of July, 1903, they filed their petition in bankruptcy against the said company in the Eastern District of Tennessee, and that pending a hearing of the said petition that court had appointed one Orion L. Hurlbut receiver of one of the plants of the said company located within that district; that the defendant company has also a factory and plant in Memphis, Tenn., within this district; that the property within this district has been attached by various creditors of the company with a view of obtaining a preference in the satisfaction of their debts and in contravention of the provisions of the act of Congress relating to bankruptcy; that it is necessary for the preserva-tion of the estate of the alleged bankrupts that a receiver should be appointed to take possession of the property at Memphis, as well as that at Chattanooga, within the Eastern District of Tennessee. The prayer of the petition is that the said petitioners may be allowed to file their petition on executing a bond for costs, and that the said Hurlbut be appointed ancillary receiver of all the property and assets of the defendant company at Memphis, Tenn., consisting of real es-tate, the plant or factory of the company there located, and all its equipments and materials, together with its contracts, choses in ac-tion, and other personal property, or that, it being necessary, some other person may be appointed such ancillary receiver.

The petition exhibits the order of the District Court at Chattanooga appointing Hurlbut receiver upon giving a bond of $3,000, and directing him to take immediate possession and control of the property, and hold the same intact until the further order of the court. He is further directed to effect insurance, to take an inventory of the property, and require all tenants thereon to attorn to him at once. Accompanying the petition is the form of an order by this court appointing the said Hurlbut as ancillary receiver of all the property of the defendant company at Memphis, couched in the same language as the original order in the court at Chattanooga, and directing the receiver to take immediate possession of the property here, as he was directed to take possession of the property at Chattanooga.

We cannot properly or conveniently do judicial business such as this, especially in the bankruptcy court, by epistolary correspondence; and the reasons for it are stated by me in Re Sykes, 106 Fed. 669. The petition, therefore, has been handed to the clerk with instructions to file it, and await such action as the parties may take in the premises.

But, apart from this reason of the court for declining to sign and enter the order sent to the judge by mail, there is a more important one. No order appointing a receiver or otherwise disturbing the possession of property should be granted by any court without notice to the parties in possession and those otherwise interested; notice that would constitute due process of law, as required by the Constitution of the United States. Even if the bankruptcy statute permitted such a summary proceeding as that which is indicated by this petition and its accompanying order, it is my opinion that it would not be in conformity to article 5 of the Constitution of the United States, which declares that no person shall be deprived of life, liberty, or property without due process of law. A mistaken notion seems to have grown up in reference to bankruptcy proceedings that they are in some way outside of this requirement of the Constitution, and constantly applications are made for some summary action by the courts in bankruptcy without any notice whatever to the parties who are in possession of the property, as has been done in this case.

Before the foregoing telegram was received by me I had been informed by local attorneys here representing creditors with very large debts against the defendant company that they desired to be notified if any proceedings were taken in this court against the defendant company; that proceedings in equity or bankruptcy had been taken against the company in the federal courts of New Jersey, in which state the company was chartered and has its domicile; that already the property in this city had been seized by the sheriff under process from the state courts; that a proceeding has been commenced by a general creditors' bill for the appointment of a receiver by the state chancery court; and that it was understood that the parties in possession claimed that they were acting under the possession and control of a receiver appointed at Birmingham, Ala., where also it seems this company has a plant and factory, as well as in other places not definitely known to me.

Manifestly, if we had the power to proceed summarily and without notice upon a petition such as this, having no parties defendant, and praying no kind of process or notice of any kind, nor contemplating such process or notice in any way, it would not be proper, under conditions like those above described, if the information mentioned be correct, to take the action proposed by the order; not, at least, until the state officials in possession of the property, or those they represent in the state proceedings, or the persons in actual possession of the property comprehended in the order, should have been brought into court by some kind of petition against them specifically, and upon which process had issued, if not by formal writs, yet by some kind of notice, which would answer, under the circumstances, the requirement of due process of law. In the beginning, in Re Kelly (D. C.) 91 Fed. 504, 1 Am. Bankr. R. 306, and later in Re Ogles (D. C.) 93 Fed. 426, 1 Am. Bankr. R. 671, this court held that such summary proceedings are inadmissible under the existing bankruptcy statute, and that possibly if any bankruptcy statute authorized them they would be contrary to the above-cited provision of the Constitution. I understand that so far as relates to the property in adverse possession of any one the Supreme Court of the United States has confirmed the foregoing rulings of this court in the case of Bardes v. The Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 261, and the subsequent cases which have followed it; and that more especially in relation to proceedings for the dispossession of receivers or other officials holding the property of the bankrupt under the process of the state courts have the rulings in Re Ogle, supra, been confirmed by the Supreme Court in the recent case In re Watts, or In re Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. ——. Under the holdings of the Supreme Court in that case, it seems to me quite impossible that there can be any dispossession of the state courts by any summary process of the bankruptcy court, or otherwise than by formal proceedings taken by the bankruptcy court's receiver or by its trustee for that purpose. Just what those formal proceedings should be is a matter of considerable difficulty, but that is not necessary to be considered here.

Moreover, there are difficulties about the so-called ancillary jurisdiction of the bankruptcy courts assumed to exist by this petition and the order offered to be entered thereon. Recently, in Re Williams, 123 Fed. 321, it was held by this court that under the scheme of the bankruptcy statute there did not exist an ancillary jurisdiction for the purposes sought in that proceeding, for the reasons there stated, which need not be repeated here. The very purpose of the Constitution in giving Congress the power to establish a uniform system of bankruptcy, and the object of every bankruptcy statute, is to obviate the disastrous effect of the administration of insolvent estates in broken pieces, according to the insolvency laws of many different states. Ancillary administrations of insolvent assets, as found in equity courts, are neither desirable nor useful as analogies of practice in bankruptcy administrations. They have no application as precedents for bankruptcy proceedings qua bankruptcy proceedings, and only are applicable when a trustee in bankruptcy, just as any other

litigant, suing another, finds it needful to apply to the ordinary auxiliary or ancillary jurisdiction of the courts to assert his title or other rights devolved on him as an owner in trust. Other than this, ancillary proceedings in bankruptcy, if they may be so called, are unauthorized monstrosities in practice, in my judgment. The necessity for separate administrations and ancillary proceedings should not exist under any well-regulated system of bankruptcy. The design of the statute is to avoid all ancillary proceedings, and secure one uniform possession of the estate by a single court of bankruptcy having the jurisdiction to administer the assets everywhere under that statute. For the purpose of securing that object under the act of 1898, the trustee is invested with the title to the property everywhere, and according to the scheme of the act is required to go anywhere and everywhere, and assert his rights to the property in any court of competent jurisdiction, just and only as any other owner would do. He must depend for jurisdiction upon the conditions that would surround any other owner, and must proceed in any court according to its proper methods of procedure, and only as any other owner would proceed; and it is a mistake, in my judgment, to suppose that he has in bankruptcy courts or in the other federal courts any right to a jurisdiction, authority, or power, by reason of the proceedings in bankruptcy, other than any owner would have, except that he might resort to a federal court of competent jurisdiction to enforce the rights he has derived by his title to the property as a bankruptcy trustee, just as any plaintiff presenting a case arising under the Constitution and laws of the United States might do, if it shall be held under the very guarded rulings of the Supreme Court of the United States on that jurisdiction that his claim of title or right to the property does present a case arising under the Constitution and laws of the United States, thus giving a federal court jurisdiction where there is no diversity of citizenship between him and the defendant in the case he makes. This petition suggests these difficulties, and they afford another reason for not taking the summary proceeding that is asked by the immediate appointment of an ancillary receiver without notice to anybody. A summary method is not relieved of its vice as such by calling it ancillary. The service of process upon the defendant in a case of involuntary bankruptcy in one district, or of a rule to show cause against an application for a receiver there, will not support a similar application elsewhere in another district, even if the proceeding be ancillary; for there must be proper and appropriate process in ancillary proceedings as in others.

The most hurtful weakness of the present bankruptcy statute is that it has not provided for the care and custody of the property of an alleged bankrupt pending litigation upon an involuntary proceeding, or, at least, that it is not more specifically directed how the bankruptcy courts may proceed in protecting the property pendente lite. The act, by section 2 and section 23b (Act July 1, 1898, c. 541, 30 Stat. 545, 552 [U. S. Comp. St. 1901, pp. 3420, 3431]), as amended by section 8 of the amendatory act of February 5, 1903 (32 Stat. c. 487), confers ordinary equity jurisdiction, "as distinguished from proceedings in bankruptcy," to use the phrase of section 23a, upon the District Courts,

which they could not have exercised before, in aid of the bankruptcy jurisdiction which each has acquired in any given case of bankruptcy brought in that court, and which, possibly, that court would have had by implication arising out of the jurisdiction in bankruptcy, if there had been no specific grant; also, possibly, such a jurisdiction in cases arising out of a bankruptcy in some other district. It also confers such a general equity jurisdiction, by section 23, upon the Circuit Courts, which quite plainly they would have under the general law, apart from the bankruptcy statute. But that is all the jurisdiction the act confers, and we have no statutory directions as to its exercise. There is no special provision allowing the court having charge of the bankruptcy case to use its authority to protect the property located in other districts, such as might have been had. How a receiver appointed by the court of original jurisdiction shall proceed to obtain possession of the property in another jurisdiction is not declared either by the act or the rules of the Supreme Court made to govern the practice. What are the powers to be conferred upon such a receiver; whether his title and rights of action are the same as would belong to a regularly appointed trustee in bankruptcy; or whether he is limited, more or less, in his title and authority— is not declared by the act. Whether he is to bring suits to recover property in other jurisdictions in his own name, or whether the petitioning creditors are to bring them in their name, is not pointed out in the act or Supreme Court rules. What he is to do in the struggle for possession with adverse claimants, or with vigilant and competing creditors, desirous, through the state courts or otherwise, to get the first possession of the property held in their particular locality, is not pointed out in the act nor by any of the rules of the court. It may not be doubted that he could proceed, in law or equity, in a court of competent jurisdiction, as any other receiver would. But, as the legislation now is, in taking such steps he can act only according to the rights and remedies given to ordinary receivers. He must be authorized to do the particular thing proposed either by the specific directions contained in the orders of the court which originally appointed him, or by such orders made upon formal and proper pleadings in another court, giving such relief as would be decreed to him by what properly may be called auxiliary or ancillary proceedings. But these auxiliary or ancillary proceedings cannot be taken any more than any other proceedings can be taken without proper pleadings and process which shall meet the requirement of being due process of law. Proper parties must be made defendants upon averments of fact sufficient to show a federal jurisdiction, as in other cases, and the right to relief, and they must be brought into court by some appropriate process of law, whatever that may be, to make whatever defense they may have against such proposed ancillary jurisdiction; and a bankruptcy court in another district has no more authority than any other court to proceed without such proper pleadings and process to administer even ancillary or auxiliary relief. The mere fact that bankruptcy proceedings are pending elsewhere is not enough to entitle the plaintiffs to any relief, if there be nothing more.

The trouble here is that the petitioning creditors make an effort

summarily to seize property, without process, by calling their proceeding ancillary, assuming that the bankruptcy courts have power to aid other bankruptcy courts in that convenient way simply because they are both bankruptcy courts. There is no such jurisdiction in any court, in my judgment. It requires a formal bill in equity against the proper parties, in a court of competent equity jurisdiction, to obtain that auxiliary relief which the petitioning creditors need and seek by this proceeding. A district court of the United States may be one of such courts of equitable jurisdiction, if the bankruptcy statute so provides; but it does not possess the power qua a court of bankruptcy to entertain such a bill. Technically, there is no "court of bankruptcy," as to any given case, except that one court in which the bankruptcy proceedings are pending. These considerations furnish additional reason for not granting the order which has been sent here from the bankruptcy court in the Eastern District of Tennessee in the manner above described, and therefore the clerk has been directed to file and hold the papers until parties may proceed as they shall be advised.

Ordered accordingly.