In re SOUTHWESTERN BRIDGE & IRON CO.

(District Court, D. Kansas, Second Division. November 29, 1904.)

No. 268.

1. BANKRUPTCY—JURISDICTION OF PROCEEDINGS—ASSOCIATED CORPORATIONS OF DIFFERENT STATES.

Two manufacturing corporations engaged in the same business, one organized in Kansas, and having its place of business there, and one in Oklahoma, having its principal place of business there, and also an office in Kansas, where meetings of directors and stockholders were held, were owned and managed by the same persons, practically all of the stock of the Kansas company being owned by the other. Their business was conducted together, and so intermingled that it was impossible to separate it. They became insolvent, and a petition in bankruptcy was filed against each in Kansas, where a receiver was appointed for their property. Subsequently a petition was filed against the Oklahoma company in that territory, where a receiver was also appointed. *Held* that, it being necessary to protect the interests of creditors that the two estates should be administered together, the Kansas court, having first acquired jurisdiction, would retain it, and proceed to a final adjudication and determination of the rights of the creditors in the joint property.

In Bankruptcy. On plea to the jurisdiction of the court.

Robberts & Curran and J. M. Dodson, for the plea.

Joseph A. Brubaker, Amidon & Dyer, Houston & Brooks, Kos & V. Harris, J. N. Haymaker, Stanley, Vermilion & Evans, and Dedrick & Dedrick, opposed.

PER CURIAM. Prior to the 11th day of September, 1902, there existed the Wichita Bridge & Iron Company, duly incorporated under the laws of the state of Kansas, with a capital stock of $25,000, divided into 250 shares of $100 each, with its principal place of business at the city of Wichita, Kan. (hereinafter called the "Kansas company"). There also existed a corporation known as "The Oklahoma Bridge & Structural Steel Works Company," duly incorporated under the laws of the territory of Oklahoma, with its principal place of business at Enid, in the territory of Oklahoma. On the date mentioned, in pursuance of an arrangement theretofore entered into between the managing officers of the two corporations, a new corporation was formed under the laws of the territory of Oklahoma, called "The Southwestern Bridge & Iron Company" (hereinafter called the "Oklahoma company"), with a capital stock of $100,000, its principal place of business, as stated in its charter, as follows:

"The place where its principal business is to be transacted is at Enid, Garfield county, in Oklahoma Territory; that also a business office is to be at Wichita, Sedgwick county, Kansas, where also meetings of the stockholders and directors of said company may be held. That the main office is to be at Enid in Oklahoma Territory."

No subscription to the capital stock of the Oklahoma company was made, but $50,000 of its stock was issued to the managing officers of the Oklahoma Bridge & Structural Steel Works Company, and that company conveyed all its property to the Oklahoma company, and ceased doing business. The remaining $50,000 of its stock was issued

to the managing officers of the Kansas company. At the first meeting of the board of directors of the Oklahoma company, the record made is as follows:

"On motion it was decided not to discontinue the corporation of the Wichita Bridge & Iron Company, but that two hundred and forty-five shares of the stock of said Wichita Bridge & Iron Company be issued to the Southwestern Bridge & Iron Company, and that one share of the stock in the Wichita Bridge & Iron Company be issued to each of the following named persons: George H. Bradford, E. D. Mills, H. Anthony, J. F. Warren, and J. P. Renshaw"—which was done.

The managing officers and directors of the Kansas company, residents of the city of Wichita, became the principal officers and directors of the Oklahoma company, continuing to reside in the city of Wichita. All meetings of the stockholders and board of directors of the Oklahoma company were thereafter held in the city of Wichita. The plant at Wichita, employing a large number of men, was operated as before the formation of the Oklahoma company; also the plant at Enid, in the territory, employing many persons, was there operated,—the two corporations in all things working together for a common purpose. Contracts for the construction of bridges entered into by the Kansas company were filled and performed in part by the Kansas company and in part by the Oklahoma company, in the same manner as were contracts for the construction of bridges entered into by the Oklahoma company. The employés working at the Wichita plant, the men employed in the building of the bridges at the place where they were constructed, and the managing officers of both corporations contracted with the Kansas company for their employment, and were paid in the name of that company. The contract price paid for the work and material furnished, outside of that done in Garfield county, in the territory, whether performed and furnished by the Kansas company and its employés, or the Oklahoma company and its employés, was remitted to the Kansas company. The contract price for local work done in Garfield county was collected by the Oklahoma company. The materials for all wooden bridges were furnished by the Kansas company. Bills payable by the Oklahoma company were paid or renewed by the Kansas company. Books showing the materials received by the Oklahoma company at its plant in Oklahoma from the Kansas company, and the local affairs of that company, were kept by the Oklahoma company, but that company kept no books from which it could be determined what either its profits or losses were, or the extent or nature of its liabilities or assets. In short, as shown by the evidence in the case, and as admitted by counsel for the plea in oral argument before the court, the business of the two corporations is so intermingled and interwoven as to be absolutely inseparable.

In this condition of affairs, the business done by the companies being unprofitable and the companies insolvent, on the 13th day of October, 1904, a petition in involuntary bankruptcy was filed in this court against the Kansas company, and on the 17th day of October a supplemental petition was filed in that case, and also a petition in involuntary bankruptcy was filed in this court against the Oklahoma company, which petition is in due form, containing proper averments as

to jurisdiction, and duly verified. On that day an appearance was entered by the Kansas company in the one case and the Oklahoma company in the other, by resolution of the board of directors of both companies, admitting insolvency and the commission of acts of bankruptcy. Upon the same day, upon application made, a temporary receiver was appointed in each of said cases. The receiver duly qualified and took possession of the property of both companies in this state and in the territory. On the day following, a petition in involuntary bankruptcy, containing the necessary averments and in due form, was filed in the District Court of the Territory of Oklahoma in and for the Fifth Judicial District against the Oklahoma company, and upon application to that court a temporary receiver for all the property of the Oklahoma company in the territory was appointed, and the receiver thereof theretofore appointed by this court, and in possession of the property of the Oklahoma company in the territory, was dispossessed by the receiver appointed by the territorial court. Upon order made by this court for a rule upon the receiver appointed by the territorial court, and his solicitors, and the creditors applying to the Oklahoma court for the appointment of such receiver, and their solicitors, to show cause why they should not be punished for contempt of the order of this court, such receiver and his solicitors, and the solicitors of the creditors applying to the Oklahoma court, appeared, disclaimed any knowledge of or intention of violating the order of this court theretofore made, were purged of contempt, and, by stipulation herein filed, agreed to submit the question of jurisdiction of this court over the Oklahoma company and its property to the decision of this court, and to abide by such decision unless reversed or set aside by proper appellate proceedings. A plea to the jurisdiction of this court has been interposed and submitted to the court in oral argument and upon briefs filed.

Whether solicitors contending for the jurisdiction of this court over the Oklahoma company and its property are correct in their assertion that all creditors of the Kansas company are also creditors of the Oklahoma company, and vice versa, it is neither necessary nor proper to now decide. It is sufficient for the purpose of decision of this plea to hold, on account of the admitted impossibility of separating the business transactions of the territorial company from those of the Kansas company, and vice versa, that one court must control the settlement and distribution of the joint property of both companies, to the end that one court may properly determine whether all claims are claims against the joint company or against the separate companies. To my mind, the very exigencies of the case create an imperative necessity that the entire estate of both companies shall be brought within one jurisdiction and there administered. Whether this ruling shall be placed upon the ground that the two companies are in legal effect in this bankruptcy proceeding to be treated the same as partners, or two separate corporations employed in the accomplishment of a common purpose, need not be determined. The fact that a just settlement of the estate, and a proper distribution of the proceeds arising therefrom among the creditors, requires it, is sufficient. In the case of In

re Boston, Hartford & Erie Railroad Company, 9 Blatchf. 101, Fed. Cas. No. 1,677, it is said:

"The petition shows that the debtor is either a single corporation, exercising corporate powers by authority of Massachusetts, having its principal office and place of business in Boston, in the District of Massachusetts, and therefore within the jurisdiction of the bankrupt court there, or two corporations united, owning all their property in common, conducting their business for the joint benefit, exercising like powers, having in all respects a common interest, performing all their functions to compass one object, for the benefit of the same corporators and stockholders, and having one set of creditors. In this aspect they may be something more than partners, but they are so united that they are plainly within the section of the bankrupt act relating to partnerships, as well as within that relating to joint-stock companies, and are therefore liable to be proceeded against in the District of Massachusetts. It is no less true that, in either view of the character of the company, it was equally liable to be proceeded against in the District of Connecticut. The District Courts of both districts had jurisdiction over the debtor as a bankrupt."

Conceding, therefore, that jurisdiction existed in the first instance both in the proper bankruptcy court of the territory and this state to administer the bankrupt estate of the two corporations, the question remains, which court shall now administer the estate? The contention made by solicitors for the plea is that, as the Oklahoma company is a citizen of the territory of Oklahoma, with its principal place of business at the city of Enid, in that territory, the bankruptcy court for the proper district of the territory should retain jurisdiction over the property of that company in the territory, and there administer it. The contention made by solicitors in opposition to the plea is that, the Kansas company having its principal place of business at the city of Wichita, within the jurisdiction of this court, and the Oklahoma company having a place of business within the jurisdiction of this court at which its directors' meetings were held, and the business of the two corporations being so intermingled that a separation cannot be had, and this court having first acquired jurisdiction of the joint property, it may proceed to a final adjudication and determination of the rights of the creditors in the joint property, and a distribution of the proceeds pro rata among the creditors, and a determination of all questions that may arise with relation thereto. As has been seen under the evidence, the business transactions of the two corporations cannot be separated. This is admitted by solicitors for the plea. As has been further seen from the condition of the affairs of the two corporations, one court, of necessity, must control the disposition of the joint property. Therefore the usually controlling feature relied upon to confer jurisdiction in cases of this character—the principal place of business of the corporation—must give way to the necessities of the case. It is a familiar rule of law, of universal application, essential to the orderly administration of justice, that, in order to avoid a conflict between tribunals of coequal authority, the court first acquiring jurisdiction must be allowed to pursue it to the end to the exclusion of others, and that it will not permit its jurisdiction to be impaired or subverted by a resort to some other tribunal. Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287; Sharon v. Terry (C. C.) 36 Fed. 337, 1 L. R. A. 572; Gaylord v. Ft. W., M. & S. R. R. Co., 6 Biss. 286, Fed.

Cas. No. 5,284; Ewing v. Mallison, 65 Kan. 484, 70 Pac. 369, 93 Am. St. Rep. 299, and cases therein cited. This rule is of peculiar force in cases arising under the act of Congress creating a uniform system of bankruptcy throughout the United States, and it has ever been the rule in bankruptcy courts that the court which first acquires jurisdiction has jurisdiction over the debtor's entire estate, the title to all property wherever situate passing to the trustee in bankruptcy. Black on Bankruptcy, p. 8; Foundry Co. v. Car & Foundry Co. (D. C.) 10 Am. Bankr. R. 624, 124 Fed. 403. In this case the business transactions of the two companies, under the testimony as admitted by counsel, being impossible of separation, and the necessities of the case requiring the entire joint estate be brought into one jurisdiction that the same may be properly and justly distributed among the creditors pro rata, and for the purpose of determining the rights of all parties therein, and this court having first, under proper pleadings and by proper process, acquired jurisdiction of the persons and possession of the property, it follows, as the only logical conclusion, the plea to the jurisdiction in this case must be overruled and denied. The receiver appointed by the territorial court, unless the judgment herein rendered is, in accordance with the stipulation, superseded, must surrender possession of the property now in his control to the receiver appointed by this court, and the joint estate be administered herein.

It is so ordered.