## Case No. 17,504.

### WHELPLEY v. ERIE RY. CO.

[6 Blatchf. 271.] [2]

Circuit Court. S. D. New York. Dec. 16, 1868.

CORPORATIONS—ILLEGAL ISSUE OF STOCK—APPOINTMENT OF RECEIVER—INJUNCTION.

1. A bill was filed against a corporation. by the holder of alleged shares of its capital stock, claiming that they had been illegally issued, the same having been issued by the conversion into stock of bonds issued by the corporation, and praying that their legality might be inquired into, and that. if they should be held to be illegal. the plaintiff might be repaid the amount paid by him for such alleged shares, and that the corporation might be enjoined. pending the suit. from disposing of so much of its property as would indemnify the plaintiff, and that a receiver of that amount might be appointed. It appearing that the moneys re-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ceived by the corporation, on the issue of the bonds, had not been kept separate from its general funds, and could not be traced and identified: *Held*, that the injunction could not be granted, or the receiver appointed.

2. An order for an injunction or a receiver, will not be made in an improper case, even on the consent of both parties to the suit, more especially where the rights of third parties may be concerned.

[Cited in The Holladay Case, 29 Fed. 236.]

The bill in this case was filed against the Erie Railway Company, by [Henry B. Whelpley,] a stockholder, charging that he was the owner of one thousand shares of its stock, and that they were a part of two hundred thousand shares overissued by said company, in violation of its charter, and contrary to law. It prayed that such issue of stock might be inquired into, and its legality, or illegality, be established; that, if it should be held that the said issue was illegal and void, the company might be decreed to pay to the plaintiff the amount paid by him for such spurious stock; that the company, pending the suit, might be enjoined from disposing of its property, or so much of it as would indemnify him; and that a receiver might be appointed, and the company be decreed to convey to him a sufficient amount of moneys, or securities, to enable him to pay to the plaintiff the advance made by him for said stock, with interest. The bill was filed on behalf of the plaintiff, and of all other persons holding the alleged overissued stock. The district judge, at chambers, no opposition being made, and notice of the application being waived by the company, granted the injunction, and appointed a receiver. August Belmont and Ernest B. Lucke now came into court with a petition, setting forth that they were the holders of a portion of such overissued stock, and asked to be made parties to the suit, as provided for in the bill, and as interested in the question to be determined by the court, and charged that the person appointed receiver was an unfit person, disqualified for the proper discharge of the duties of that office.

Charles O'Conor, for Belmont and Lucke.
Edwin W. Stoughton, David Dudley Field, and John K. Porter, for defendants.

NELSON, Circuit Justice. The question involved in this alleged overissue of stock depends upon the construction of several provisions of the laws of the state of New York concerning the powers and duties of railroad corporations. Different and conflicting constructions of such provisions are insisted upon by the respective parties, and the questions involved therein, must necessarily come up for consideration and disposal, on the final hearing of the case, on pleadings and proofs; but, in the view I have taken of the case, it will not be necessary, or, perhaps proper, to express an opinion in respect to them, on this preliminary motion.

I am satisfied, on an examination of the bill, and of the papers in opposition, that a case has not been made out that will authorize the court to uphold the order for the injunction, or for the appointment of a receiver, even assuming the stock in question to be a part of an illegal issue or an over issue. If the moneys received on the issue of the bonds which were converted into stock had been kept apart and separate from the general funds of the company, and could be traced and identified, an equity might well arise in behalf of the defrauded stockholders, against the particular fund, and attach to the same. In equity and conscience, the money paid on the issue of the bond, and thus traced and identified, would be the money of the person who paid it; and the holder of stock, into which the bond had been converted, and who would represent the bond on which the money was paid, would stand in the same equitable relation to the fund as the person who paid the money. But the bill, in this case, does not place the right of the plaintiff to follow the moneys advanced on the alleged fraudulent issues of stock, on the ground that such moneys were kept separate and apart from the general funds of the company. On the contrary, it sets up the right to have set apart from these general funds a sufficient amount to reimburse the plaintiff for these advances, thereby, impliedly, at least, admitting that they have been commingled with the general mass. Besides, the opposing papers show that this is the fact. Judge Story thus states the principle applicable to such a case (2 Story. Eq. Jur. § 1265): "Where there is any fraud touching property, they" (courts of equity) "will interfere, and administer a wholesome justice, and sometimes even stern justice, in favor of innocent persons who are sufferers by it, without any fault on their own side. This is often done by converting the offending party into a trustee, and making the property itself subservient to the proper purposes of recompense, by way of equitable trust or lien. Thus, a fraudulent purchaser will be held a mere trustee for the honest, but deluded and cheated, vendor." And, as stated by Lord Ellenborough in Taylor v. Plumer, 3 Maule & S. 562, 575, "it makes no difference, in reason or law, into what other form, different from the original, the change may have been made, whether it be into that of promissory notes for the security of the money which was produced by the sale of the goods," &c., "for, the product of, or substitute for, the original thing, still follows the nature of the thing itself, as long as it can be ascertained to be such, and the right only ceases when the means of ascertainment fail, which is the case when the subject is turned into money, and mixed and confounded in a general mass of the same description." See, also, Thompson v. Perkins [Case No. 13,972], and 2 Story. Eq. Jur. § 1259. In the latter condition of things, the aggrieved party can come

in only as a general creditor, and is entitled to no preference. or priority, over that class of creditors. This is the condition of the plaintiff in this bill.

It is claimed, by the counsel for Belmont and Lucke, that the receiver should be removed as unfit and disqualified, on the facts set forth and admitted in the case, and some other person be appointed in his place; and that the company is estopped from contesting the matter, because it assented to the appointment of the receiver. I do not assent to this view. The company waived the notice which is required by the rules and practice of this court, before an injunction can be issued; but the order for the injunction; and for the appointment of a receiver, depended upon the judgment of the judge who granted them. Indeed, I am not prepared to admit that an order for an injunction. or a receiver, can be made in an improper case, even with the consent of both parties, more especially where the rights of third persons may be concerned.

My conclusion, on the whole. is, that Belmont and Lucke be permitted to join as parties to the suit, that the injunction be dissolved, and that the order appointing a receiver be vacated and set aside.