### SIMMONS HARDWARE COMPANY v. WAIBEL et al.

1.  The plaintiff, inventing and preparing a secret code or system of letters, figures, and characters, showing the cost and selling price of its wares and merchandise, for use between itself and its traveling salesmen, has a property therein which the law will protect; and, when the remedy at law is inadequate, courts of equity will lend their aid by granting a temporary injunction, and the appointment of a · receiver, in order to prevent irreparable injury *pendente lite*.

2. When parties have become possessed, in a wrongful and fraudulent manner, of a knowledge of such secret code or system, and the key thereto, and have copied the same into a catalogue of their own, a court of equity should take such marked catalogue into its possession, through a receiver, and retain it pending the action, when, in furtherance of justice and to prevent a fraudulent use of such secret code or system, such intervention becomes necessary.

3. The appointing or refusing a receiver is within the sound judicial discretion of the court to which application is made, and this court will not interfere with the exercise of this discretion when the evidence is conflicting, unless this court is satisfied such court has abused its discretion.

4. *Held*, in this case, that there was such an abuse of discretion by the lower court, in making the modified order directing the receiver appointed by it to return to the defendants the Simmons Hardware Catalogue, containing the secret code or system invented by plaintiff for the transaction of its business between itself and its traveling salesmen, which had been wrongfully and fraudulently copied therein by the defendants.

5. *Held, further*, that a temporary injunction, while properly granted, was not an adequate remedy in this case, as such injunction could only be effective while defendants were within the jurisdiction of the court, and that, to prevent the improper use of said marked catalogue beyond the jurisdiction of the court, the court properly took the same into its possession, through a receiver, and that the order modifying its original order, directing a receiver to return said marked catalogue to defendants, was erroneous, and should be reversed.

(Syllabus by the Court. Argued April 16, 1890. Opinion filed Jan. 30, 1891.)

Appeal from district court, Beadle county. Hon. JAMES SPENCER, Judge.

The material facts and the nature of the proceedings are stated in the opinion.

*Mouser & Vollrath*, for appellants.

The defendant Donaldson having surreptitiously and by fraud acquired a knowledge of plaintiff's trade secrets should be restrained from using or disclosing them. Tipping v. Clarke, 2 Hare. 383; 2 Story's Eq. Jur., § 952; Morrison v. Moat, 9 Hare 241; Peabody v. Norfolk, 98 Mass. 452; High. on Inj., § 437. The catalogue should have been permitted to remain in the hands of the receiver. High on Receivers. §§ 15, 11, 737, 738; Kerr on Receivers, p. 7; 1 Story's Eq. Jur., §§ 709, 710.

*A. B. Melville* and *E H. Aplin*, for respondents.

All the equities in appellant's bill for an injunction being denied the injunction must be dissolved. Stearns v. Myers, 11 Ia. 184; Anderson v. Reed, 11 Ia. 177; High on Inj., § 1505; Woodruff v. Fisher, 17 Barb. 224. The order of the district court modifying the injunction should not be disturbed unless there has been an abuse of discretion. Hobbs v. Canal Co., 4 Pac. 1147; Fowler v. Heinrath, 2 Pac. 248; High on Inj., § 1508; High on Receivers, § 737.

CORSON, P. J. On March 1, 1889, the plaintiff filed its verified complaint in the district court, in which it is alleged, in substance, that it is engaged in the wholesale and retail hardware business in the city of St. Louis; that it has a large amount of capital invested in its said business, several hundred clerks and about ninety traveling salesmen engaged in selling its wares and merchandise in nearly all the states and territories; that it has prepared and published, at great expense, an illustrated and printed catalogue containing about 1,500 pages, for distribution among its customers; that it has invented and prepared, at a cost of many thousand dollars, a secret code or system, represented by letters, figures and characters, showing the cost and selling price of its many articles of merchandise, which is marked in such of its catalogues as are intended for use in its said business by its traveling salesmen, and which said secret code or system is not marked in the catalogues distributed to its customers; that in January, 1887, it employed one Frank Meech as one of its traveling salesmen, and intrusted to him, as such, one of its catalogues containing its said secret code or system of letters, figures and characters marked therein, with the key thereto; that in his business as such traveling salesman, said Meech frequently visited the city of Huron, in Dakota, and made sales of goods to the defendants, who were customers of plaintiff, and engaged in the hardware business; that during the year 1888, the defendants, in collusion with said Meech, who still continued in the employment of plaintiff as such traveling salesman, wrongfully and fraudulently obtained from said Meech the said privately marked catalogue, containing its secret code or system of letters, figures

and characters, showing the cost and selling price of its said wares and merchandise, with the key thereto, and copied the same therefrom into one of plaintiff's catalogues that had been furnished to defendants as customers of plaintiff, and that defendants thereby wrongfully and fraudulently became possessed of a knowledge of plaintiff's said secret code or system, and a copy of the same; that plaintiff, upon ascertaining said fact, demanded of defendants the said copy of its secret catalogue so wrongfully and fraudulently made by them, and that on or about February 19, 1889, defendants returned to plaintiff said marked copy, but before doing so they fraudulently and wrongfully copied said secret code or system into one of plaintiff's said catalogues it had furnished to Shefler Bros., also customers of plaintiff, from whom defendants had obtained it, and that said defendants now retain said last-mentioned or Shefler copy, refuse to return same to plaintiff, and threaten to make known said secret code or system, with the key thereto, to customers of plaintiff, to the great damage and injury of plaintiff; that to invent and prepare a new code or system will cost the plaintiff several thousand dollars and require at least six months' time, and that during such change of system plaintiff will be greatly embarrassed in the transaction of its business. An injunction, receiver, etc., are prayed for.

On filing the complaint, and two supporting affidavits, the court granted *ex parte* a tempory injunction, and appointed a receiver, to whom defendants were required to deliver said (Shefler) copy of the catalogue alleged to have been copied by them from the former copy returned to plaintiff. On April 18th the defendants moved the court, upon the affidavit of defendant Donaldson, pleadings, proceedings, etc., in the case, to vacate said order made March 1st. The court on the hearing refused to vacate said order, but made an order modifying it by directing that receiver to return said (Shefler) copy of catalogue to defendants. From so much of said order of April 18th as required the receiver to return said copy of catalogue to defendants, plaintiff appeals to this court, and assigns such modification of the original order as error.

The appointing or refusing a receiver is within the sound judicial discretion of the court to which application is made, and this court will not interfere with the exercise of this discretion by the lower court when the evidence is conflicting, unless this court is satisfied such lower court has abused its discretion. Mays v. Rose, Freem. Ch. (Miss.) 703; Chicago & A. O. M. Co. v. United States P. Co., 57 Pa. St. 83; Whelpley v. Railroad Co., 6 Blatchf. 271; Story, Eq. Jur. §§ 831, 832; High. Rec. §§ 7-25; Pom. Eq. Jur. § 1331. Was there, then, a substantial conflict in the evidence upon the material facts in this case? and, if there was such conflict, was there an abuse of discretion by the court? The respondents contend that the affidavit of Donaldson denies all the equities of the bill relating to the Shefler catalogue, and invoke the rule of the courts of equity applicable to injunctions, that, when the equities of the bill are denied by the answer, the injunction will be denied. Anderson v. Reed, 11 Iowa, 177; Stevens v. Myers, Id. 184. But that rule does not apply to this case, for the reason that the receiver was appointed, not upon the complaint alone, but on the complaint and supportirg affidavits, and upon the hearing additional affidavits were read on the part of the plaintiff; and the rule itself is subject to many qualifications and exceptions not necessary now to be noticed. This affidavit will therefore be considered as the other affidavits in the case.

· The only evidence introduced on the part of the defendants on the hearing was the affidavit of defendant Dolaldson, before referred to. This affidavit, while it denies each and every allegation in the complaint in general terms, does not deny the various allegations of the complaint and supporting affidavits in that clear and specific manner that entitles it to much weight in a court of equity. It is evasive and unsatisfactory, and leaves upon the mind the impression that, while there is an attempt to deny the allegations of the complaint and supporting affidavits, there is a want of good faith on the part of Donaldson, and an effort on his part to conceal the real facts in the case. All the material facts stated in the complaint were fully sustained by affidavits introduced and read in evidence on the

part of the plaintiff.   That defendant Donaldson did, in collusion with Meech, plaintiff's traveling salesman, wrongfully and fraudulently obtain from said Meech the secret catalogue entrusted to him by the plaintiff, and make a copy of the same, and that they did in the same manner obtain the key to the same, and did thereby become possessed of a knowledge of plaintiff's secret code or system to which he was not entitled, is proved by too clear and satisfactory evidence to admit of any doubt.   That he did return to plaintiff the first copy so made is admitted.   The only question remaining is, did Donaldson, before returning the said marked copy, make a second copy therefrom in the Shefler catalogue now in controversy?   After a careful examination of the evidence, we think there cannot be much doubt upon this question.   It may be true that there were some slight changes made in the letters, figures, and characters used by plaintiff to represent the cost and selling prices of plaintiff in the Shefler copy, but we think it is equally true that in the changes made, if any, defendant Donaldson had so arranged them that he preserved in substance the plaintiff's system.   H. P. Huckins says in his affidavit that he is one of the traveling salesmen of plaintiff, and is fully acquainted with the private and secret code of plaintiff, represented by letters, figures, and characters showing the cost and selling prices of plaintiff's goods, and the key thereto, and that he had examined the Shefler catalogue in the hands of the receiver, and that the basis of the prices marked therein is throughout the said cost price to plaintiff, and that it would have been impossible for any one to have marked the said Shefler catalogue with the prices marked, and the explanatory remarks therein contained, unless the person who so marked the same had access to and copied from one of plaintiff's private catalogues. In connection with this testimony are to be considered the efforts made by Donaldson to obtain one of plaintiff's catalogues from some one of plaintiff's customers before he returned to it his own marked copy.   After efforts by himself and through his confederate, Meech, he obtained one from George C. Shefler, who says, in his affidavit, that he first loaned to Donaldson his

catalogue on February 15, 1889, and that when, soon after, he requested Donaldson to return it, he replied: "I have marked the price of my goods in the catalogue, but am expecting a catalogue from the Simmons Hardware Company every day, and as quick as it comes I will express it to you." It is true he couples the admission that he had marked the Shefler catalogue with the qualification that he had marked the price of his own goods in it, but this is not inconsistent with the fact that he had marked the prices contained in plaintiff's secret catalogue, as he was a customer of plaintiff, and was then in possession of a copy made from one of plaintiff's catalogues intrusted to Meech; and he subsequently took great pains to obtain a bill of sale of this catalogue from Shefler. Why these efforts and this haste to get another catalogue before he returned the first copy marked by him, if he did not require it in which to make another copy? We are of the opinion that there is no substantial conflict in the evidence, and that upon the facts the court below should have retained the catalogue in question in the hands of the receiver.

It is contended on the part of respondents that the catalogue in controversy was the absolute property of defendants, and that the court, under the established rules of equity, was not authorized to take it from them and place it in the hands of a receiver. It may be conceded, as claimed, that the Shefler catalogue in its original condition was the absolute property of defendants; but the catalogue in controversy had been changed from its original condition by the defendants by incorporating therein the private code or system invented and prepared at great expense by the plaintiff. The original catalogue was of itself of but trifling value, but with the private code or system of plaintiff marked therein it was of great value. That such a code or system as was invented and used by plaintiff in its business, and described in its complaint, was its property, is well settled, both at common law and under our own Code. Section 2676, Comp. Laws. It was the product of the skill and labors of the plaintiff, and as such is property, and is entitled to the protection of the law; and when the injury threatened would

be irreparable, and the remedy at law is inadequate, a court of equity will interfere to prevent a party who has wrongfully obtained possession of the secret from using it or disclosing it to others. And when, as in this case, a party has not only obtained knowledge of the secret code or system, but has wrongfully made a copy of the secret system, a court of equity will, in furtherance of justice and to prevent the party from fraudulently making a disclosure of the secret, not only enjoin him, but will, we apprehend, take into its possession, by means of a receiver, who is an officer of the court, such copy, so wrongfully made, to prevent fraud; and if on the trial the facts alleged are established, the court will be authorized to place such copy in the hands of the plaintiff, or at least see that plaintiff's secret marks therein shall be erased or canceled. This accords with the spirit, if not with the letter, of our Code. See Sections 3213–3221. Comp. Laws. These sections embody the rules of the civil law upon the doctrine of accessions to personal property, except perhaps Section 3219, which is a rule of the common law. Silsbury v. McCoon, 3 N. Y. 379. That courts do not hesitate to grant injunctions in such cases, is well settled by the adjudged cases. In Yovatt v. Winyard, 1 Jac. & W. 394, the court granted an injunction against one who had obtained a knowledge of a secret by a breach of trust. In Morison v. Moat, 9 Hare 241, the court restrained the defendants from using a secret in compounding a medicine, surreptitiously obtained. In Peabody v. Norfolk, 98 Mass. 452, the court held that an injunction to restrain a party from communicating a secret imparted to him in the course of his business, was proper. See 2 Story. Eq. Jur. § 952. The court was therefore clearly right in granting and continuing the temporary injunction, and this being so, we are unable to see any legal reason why the court should not have retained in the hands of the receiver the marked catalogue in controversy in this action. The powers of courts of equity over property, the title to which is involved in litigation, is broad and comprehensive, and its power to take into its possession, through its receiver, any property that is the subject of litigation, is ample and unquestioned.

The contention of defendants that, as they were the owners of the catalogue of trifling value, into which they have copied plaintiff's valuable secret code or system, it cannot be taken into its possession by a court of equity, through its receiver, and held *pendente lite.* we cannot assent to. One of the grounds upon which a receiver will be appointed is that there is no other adequate remedy. In this case the remedy by injunction is not adequate to accomplish the ends of justice. The plaintiff, by its complaint and affidavits, shows that its business extends over a large number of states and territories, in which it has many customers. Enjoining a party, therefore, from using or communicating the plaintiff's secret code or system, while effective so long as the defendants are within the jurisdiction of the court, would yet be of little efficacy in case defendants should go beyond the jurisdiction of the court, and take with them the copy, where they might use this secret by communicating it to plaintiff's customers, to the irreparable injury of the plaintiff. The flexible nature of the equitable jurisdiction of courts of equity enables that court to so mould and administer its remedies as to prevent such fraudulent and wrongful use of the catalogue in question, by at once placing it within the control of the court, and thus placing it beyond the power of the defendants to make any improper disposition of it pending the suit, by taking it beyond the jurisdiction of the court. We are clearly of the opinion that under the established jurisdiction of courts of equity the power exists in that court to take into its possession this catalogue, and we think under the evidence it was clearly the duty of the court to do so, and that its modication of its order of March 1st was an abuse of its judicial discretion. The modified order, so far as it directed the return of the catalogue to defendants, is reversed. All the judges concurring.