## T. S. FAULK & CO. v. STEINER, LOBMAN & FRANK et al.

## DAVIS WAGON CO. v. SAME.

(Circuit Court of Appeals, Fifth Circuit. December 29, 1908. Rehearing Denied February 2, 1909.)

### Nos. 1875, 1876.

1. BANKRUPTCY (§ 114*)—RECEIVERS—APPOINTMENT—NOTICE.

Under General Bankruptcy Order 23 (89 Fed. xi, 32 C. C. A. xxvi), providing that referees' orders should recite, according to the fact, that notice was given and the manner thereof, or that the order was made by consent, or that no adverse interest was represented at the hearing, or that the order was made after hearing adverse interests, an order for the appointment of a receiver should not be made by the referee without notice, except in a case of imperious necessity, when the petitioner's rights could be secured and protected in no other way.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

2. BANKRUPTCY (§ 114*)—APPOINTMENT—NATURE OF REMEDY.

The appointment of a receiver is an extraordinary remedy, and will only be made on a showing of a clear case of right and pressing necessity.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

3. BANKRUPTCY (§ 114*)—RECEIVERS—PETITION.

Under Bankr. Act (Acts July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]) § 2 (3), authorizing the appointment of receivers on the application of parties in interest in case the court shall find it absolutely necessary for the preservation of the estate until the petition is dismissed or a trustee is qualified, a petition failing to allege that the appointment of a receiver is absolutely necessary to preserve the estate, and failing to contain within itself, or by attached affidavit, sworn facts showing such necessity is insufficient.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

4. BANKRUPTCY (§ 114*)—RECEIVERS—APPOINTMENT—CONSENT BY BANKRUPT.

Consent of an alleged bankrupt to the appointment of a receiver does not authorize such appointment, where it is not absolutely necessary for the preservation of the estate, as required by Bankr. Act (July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]) § 2 (3).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

5. BANKRUPTCY (§ 114*)—RECEIVERS—IMPROPER APPOINTMENT—EFFECT.

The improper appointment of a receiver for a bankrupt should not be permitted to delay or affect the trial of the issues between the creditors filing an involuntary petition and intervening and opposing creditors as to whether the petition should be granted.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

Petitions for Revision of Proceedings of the District Court of the United States for the Middle District of Alabama, in Bankruptcy.

These cases are considered and decided together, as both petitions seek to revise and reverse the same decrees.

On November 9, 1907, at 6 o'clock p. m., an involuntary petition in bankruptcy was filed in the court below against T. S. Faulk & Co. by Steiner, Lobman & Frank, Schloss & Kahn, and the Sessoms Grocery Company (who will hereafter be referred to as Steiner and others), averring that they had provable debts against the alleged bankrupts exceeding $2,000; that the alleged bankrupts were insolvent, and that they had made preferential payments to named creditors within four months. At the same time, Steiner and

others filed a petition for the appointment of a receiver. The material averments of the petition are as follows:

"Your petitioners show that the principal assets of said T. S. Faulk & Co. consist of a stock of goods, wares, and general merchandise, books of account, choses in action, etc. That the said stock of goods, wares, and merchandise are situated in a storehouse in the town of Samson, Ala., formerly occupied by the bankrupts in this cause.

"Your petitioners further show unto your honor that the said goods and merchandise situated in said storehouse should be taken into the possession of this court, and that the same should be preserved under the orders and direction of this court for the benefit of the creditors of this estate. That it is important and necessary that, in order that the said goods, wares, and merchandise, and other property belonging to the said T. S. Faulk & Co. may be properly held, preserved, and cared for until a hearing of their original petition in this cause, a receiver should be appointed by this honorable court to collect, hold, and preserve the same for the benefit of said estate, and until the further orders of this court.

"Wherefore, your petitioners respectfully pray that your honor will make an order appointing some proper and suitable person as receiver in this cause, with power and authority, and whose duty it shall be, to take possession of, seize, hold, and preserve all of the assets, of whatsoever character or description, and wherever the same may or can be found, belonging to the said T. S. Faulk & Co., until the election of a trustee in this cause, or until the further orders of this court. And, as in duty bound, petitioners will ever pray," etc.

The petition is verified by B. Frank to the effect that he has read the same, and that the facts therein contained are true as therein set forth. There was filed in court at the same time, November 9, 1907, at 6 o'clock p. m., an order signed by the referee in bankruptcy, granting the prayer of the foregoing petition and appointing a receiver. The order is as follows:

"This cause coming on to be heard by the undersigned upon the petition of Steiner, Lobman & Frank, Schloss & Kahn, and Sessoms Grocery Company, praying for the appointment of a receiver to take charge of the property and effects of the alleged bankrupts in this cause, and to hold and preserve the same pending the further orders of this court; and it appearing to the court that it would be to the interest of the said estate that the property and effects thereof should be collected up and cared for pending the hearing of the original petition in this cause:

"It is therefore ordered, adjudged, and decreed by the court that George Stuart be, and hereby is, appointed as receiver of all of the estate, property, and effects, books of account, choses in action, and evidences of debt, of every character and description, belonging to the said T. S. Faulk & Co., with power and authority to take immediate possession thereof, wherever the same may or can be found, and hold and preserve the same until the further orders of this court.

"It is further ordered that any and all persons having in their possession or under their control any property or assets belonging to said alleged bankrupts be, and hereby are, required to forthwith deliver the same to said receiver upon demand; and all other persons and parties having in their possession any of the assets belonging to said estate are hereby ordered to deliver the same to said receiver.

"It is further ordered that this order shall not take effect until the petitioning creditors shall have entered into a bond, with good and sufficient sureties, payable as required by law, and approved by this court, in the sum of $1,000, and until said receiver shall have entered into a bond, with good and sufficient sureties to be approved by the court, in the sum of $5,000.

"Done this 9th day of November, 1907." ·

The receiver gave bond and took possession of the property of the alleged bankrupts. On December 23, 1907, T. S. Faulk & Co. filed a petition addressed to the judge of the District Court, alleging that it was not necessary to appoint a receiver to preserve the property, and that it was not necessary to continue the receiver in possession of the property pending the trial of the

original petition, and praying that the receiver be discharged and that they be restored to the possession of the property.

On the same day, the Davis Wagon Company filed a sworn petition, alleging that it was a creditor of the alleged bankrupts; that it was not absolutely necessary to appoint a receiver for the preservation of the estate of the alleged bankrupts, and that the appointment was greatly detrimental to the interest of the estate; and alleging other facts tending to show that the appointment was improvident. The petition concluded with a prayer that the receiver be discharged, and directed to deliver the property back to the possession of T. S. Faulk & Co., and that the order appointing the receiver be vacated and annulled. The court heard these two petitions, and made the following order:

"After due notice to the petitioning creditors and the receiver, this cause came on this day to be heard on the petitions of the Davis Wagon Company and of the said alleged bankrupts, T. S. Faulk & Co., praying for the discharge of the receiver heretofore appointed in the cause, and for the vacation of the order of the appointment of such receiver, and for the restoration to the possession of the said T. S. Faulk & Co. of the property and assets of the alleged bankrupts now in the hands of the receiver.

"In support of each of said petitions, said respective petitioners offered the record and proceedings in the cause; no further evidence being offered by any of the parties.

"And now, after due hearing of said petitions, it is ordered and adjudged by the court that, in so far as they respectively pray for the discharge of said receiver and the vacation of the order of appointment of the receiver, they be, and the same are hereby, denied and refused.

"Done this December 23, 1907."

The record shows that the alleged bankrupts duly filed an answer to the involuntary petition against them, denying their insolvency, and denying the alleged act of bankruptcy, and claiming that the aggregate value of their property would exceed $50,000, and that their debts were not in excess of $28,000. They also filed a written demand that the issues presented by the petition and the answer be tried by jury.

On the application of the Davis Wagon Company and 18 other creditors of the alleged bankrupts holding claims varying in amount from $15 to $1,000, an order was made that they be severally and separately allowed to appear in opposition to the petition filed herein for involuntary bankruptcy, and they were made parties to the proceeding. Thereupon they filed a plea, severally and separately denying that T. S. Faulk & Co. had committed an act of bankruptcy, as alleged in the petition, or that they are insolvent, and demanding a trial of the issue by jury.

Steiner and others filed the following replication to the pleas or answer of T. S. Faulk & Co.:

"(1) That said original petition filed in this cause by them against the said T. S. Faulk & Co. to adjudge the said Faulk & Co. bankrupts, within the purview of the acts of Congress relating to bankruptcy, was filed at the instance and request of the said T. S. Faulk & Co., and upon their admission of the facts therein alleged.

"(2) That on, to wit, the 6th of November, 1907, the said T. S. Faulk, acting for and on behalf of the said firm of T. S. Faulk & Co., and being fully authorized in that behalf, informed the petitioners, in substance, that said firm was financially embarrassed to such an extent as to be unable to continue the mercantile business in which said firm was then engaged; that his said firm owed large sums of money, which was then past due, and consulted and conferred with the representatives of some of the petitioners with the view of devising a plan whereby he could pay or satisfy the creditors of said firm of T. S. Faulk & Co., or provide a method for the administration of the assets of said firm for the benefit of said creditors; and petitioners aver that as the result of said negotiation or conference the said T. S. Faulk, acting for and on behalf of said T. S. Faulk & Co., and being authorized so to do, requested that petitioners file a petition in bankruptcy against him and obtain the appointment of a receiver to take charge of his assets and property for the benefit of his creditors, and represented to your petitioners to be true the facts so

alleged, and which were alleged, in said petition, and that, pursuant to said request, your petitioners, in good faith, filed the petition in this cause, and, upon the filing thereof, obtained the appointment of a receiver to take charge of the assets of said firm, and, as a condition precedent to the appointment of said receiver, they executed the petitioner's bond required by law in such cases in the sum of, to wit, $1,000, and they also became surety upon the bond of the receiver appointed in said cause, in the sum of, to wit, $5,000, which said bonds were made pursuant to the statute in such cases provided, and pursuant to the order of the court in the premises; that your petitioners employed counsel to represent them in the filing of said petition and in the said proceeding, and incurred the costs and expenses incident thereto, amounting in the aggregate to a large sum, and for all of which they became liable.

"Wherefore, your petitioners aver that said Faulk & Co. have waived their right to interpose, or are estopped from interposing, the defenses sought to be set up in said several pleas or answers.

"(3) That on, to wit, the 6th day of November, 1907, T. S. Faulk, acting for and on behalf of said firm of T. S. Faulk & Co,, requested that the petitioners in the said original petition in bankruptcy filed in this cause put said firm in involuntary bankruptcy, upon the grounds in said petition alleged, in order that the assets of said firm might be administered for the benefit of the creditors of said firm; that, acting upon said request, petitioners in the said original petition in bankruptcy in good faith employed counsel, and incurred a liability therefor, in the premises, and instructed said counsel to file the petition in bankruptcy against said Faulk & Co.; that said counsel did accordingly and in good faith file the said original petition for petitioners in this cause, and obtained the appointment of a receiver, which said receiver duly qualified and took possession of the assets of said Faulk & Co.; that petitioners paid the costs required by law to be paid upon the filing of said original petition in this cause; that they executed a petitioner's bond as a condition precedent to the appointment of a receiver, and that some of them became liable as sureties on said receiver's bond, all of which was done at the instance and request of the said T. S. Faulk & Co.

"Wherefore, they say that the said T. S. Faulk & Co. should not, in this honorable court, be permitted to set up the defenses sought to be set up in said pleas or answer."

T. S. Faulk & Co. demurred to these replications.

The cause came on to be heard, and Steiner and others moved the court to set aside and vacate the order which allowed the Davis Wagon Company and other creditors to intervene in opposition to the original petition. Thereupon, the court, deciding the motion and the demurrer, made and entered the following order:

"This cause coming on to be heard, came the parties, and the original petitioning creditors moved the court to set aside and vacate the order of the court made in said cause on the 10th day of July, 1908, allowing the Davis Wagon Company and certain other creditors to appear in opposition to the original petition seeking to adjudge the said defendants bankrupts, and to strike from the files the pleas of Luttrell Hardware Company, and of Troy Bank & Trust Company, and of Davis Wagon Company, et al., severally denying that said T. S. Faulk & Co. had committed an act of bankruptcy, and also strike from the files the demurrer of the Troy Bank & Trust Company and Davis Wagon Company et al., severally, to the special replications of the original petitioning creditors, which said pleas and demurrers were filed in this cause on the 10th day of July, 1908:

"And it appearing to the court that its said order of July 10th was made in advance of the hearing of the cause, and without notice to the original petitioning creditors, and subject to their right to move to vacate it: Now, upon consideration, I am of the opinion that it is within the discretion of the court to allow the creditors to intervene, after the time fixed by law for pleading, but that they should not be allowed to do so under the circumstances of this case, except for the purpose of interposing such defense as the alleged bankrupts could interpose.

"The demurrer of T. S. Faulk & Co. to the special replications of the original petitioning creditors having been argued by counsel and considered,

I am of the opinion that the facts set up in these replications are not proper matters for replication, and that the demurrers should be and are sustained; but I am of the opinion that while the matters set up in said special replications may not wholly avoid the defense set up in the pleas of the alleged bankrupts, yet, if the original petition in this cause was in fact filed by the petitioning creditors in good faith, at the instance or request of the alleged bankrupts, and the appointment of the receiver obtained and costs and expenses incurred by those creditors pursuant to such request or invitation, that it would be manifestly inequitable to permit the alleged bankrupts to defend against the petition without, at least, placing the petitioning creditors in statu quo by reimbursing them for such costs and expenses as were thus incurred; and it being made known to the court by the original petitioning creditors that such was the fact, and that they desired to make proof thereof, and the court having, in the investigation of one branch of this case wherein testimony had been taken by both parties touching this question, announced that it would examine and consider that evidence before proceeding further with the trial of the case to ascertain whether or not the contention of the petitioning creditors was sustained, but counsel for the alleged bankrupts having stated their desire to submit additional evidence upon this issue, and the court, desiring to be fully informed, deems it proper to refer the matter to a special referee to take the testimony and make report thereof to this court:

"It is therefore ordered, that it be and hereby is referred to Philip H. Stern, Esquire, as special referee, with instructions to hold a reference, giving the parties in interest, or their attorneys, reasonable notice thereof. Upon such hearing, the referee will take the testimony submitted by the parties touching the contention of the petitioning creditors, viz., that the proceeding had been instituted and costs and expenses incurred by them, in good faith, at the instance or request of the alleged bankrupts; and also the fair and reasonable expenses incurred by them in the premises, including fair and reasonable compensation for the receiver appointed in said cause for his services therein, and the fair and reasonable compensation to the attorneys of the receiver, and to the attorneys of original petitioning creditors for their service in the premises to the present time; and he will also separately ascertain the fair and reasonable value of such services from the filing of the petition to the time of the interposition of the defense by the alleged bankrupts.

"The referee is authorized to employ a stenographer for the purpose of taking and transcribing the testimony submitted, and he will report the testimony, together with his finding therefrom, to the court for its consideration, with all due diligence.

"And the court being further of the opinion that the alleged bankrupt was not entitled to have a trial by jury at this time, prior to the ascertainment of the facts as to the consent or procurement of the alleged bankrupts to the filing of the petition against them, and a determination of the rights of the parties in that event, continued the trial of the case to the next term, against the objection of the alleged bankrupts, who excepted to such continuance.

"On the coming in of the report of the special referee, the court will make such further orders in respect thereto as may then be deemed proper.

"Done this the 11th day of August, 1908."

The petitions for revision seek to vacate and reverse the foregoing orders and decrees. Among the many assignments of error, it is claimed: (a) That the facts stated in the petition for the appointment of a receiver were insufficient in law to justify the appointment; (b) that the court erred in refusing to vacate and annul the order appointing the receiver, and in refusing to discharge him. And, in the decree of August 11, 1908, it is alleged that the court erred (c) in denying them a trial until after a reference should be held to ascertain costs, expenses, and attorney's fees; (d) in ordering an ascertainment of fees to be paid by alleged bankrupts for the attorneys of the receiver in said cause; (e) in ordering the ascertainment on said reference of expenses, costs, and attorney's fees incurred by the petitioning creditors and the receiver after your petitioners had interposed their sworn plea to the original petition and their demand for a jury trial of the cause; (f) in holding

165 F.—55

that if the original petition in the cause was in fact filed by the petitioning creditors in good faith, at the instance or request of the alleged bankrupts. and the appointment of the receiver obtained and costs and expenses incurred by those creditors pursuant to such request or invitation, that it would be inequitable to permit the alleged bankrupts to defend against the petition without placing creditors in statu quo by reimbursing them for such costs and expenses as were thus incurred; (g) by referring the cause to a special referee to take testimony and make report upon the issue suggested by the court. viz., that it would be inequitable to permit the alleged bankrupts-to defend against the petition by placing the petitioning creditors in statu quo by reimbursing them for such costs and expenses as were thus incurred, as set forth in said order; (h) by holding that the alleged bankrupts were not entitled to have a trial by jury before the ascertainment of the facts as to the alleged consent or procurement of the alleged bankrupts to the filing of the petition against them, and a determination of the rights of the parties in that event.

Warren S. Reese (J. M. Chilton, on the brief), for petitioner T. S. Faulk & Co.

Massey Wilson and Thomas W. Martin, for petitioner Davis Wagon Co.

B. P. Crum (Steiner, Crum & Weil, on the brief), for respondents.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

SHELBY, Circuit Judge (after stating the facts as above). 1. When the involuntary petition was filed, the petition to appoint a receiver was also filed, and the receiver was appointed immediately, without notice to the alleged bankrupts. No fact is alleged or shown by the record to authorize the appointment without notice. The bankruptcy act does not expressly provide that notice shall be given before the appointment shall be made, but it is a general rule that, from the institution of a suit until final judgment, every step that immediately affects the rights of a defendant should be preceded by notice, and, with few and well-defined exceptions, no court is justified in appointing a receiver and seizing the property of a defendant without giving him notice and an opportunity to be heard. It is necessary to fairness and justice in all legal procedure that judicial action should be taken in open court on issue between the parties, or after an opportunity for such issue; and a regard for this rule "will not only insure the rights of litigants, but will also protect from the unjust criticisms so often made, and, what is of more importance, will secure the courts themselves against hasty and ill-considered action." Hutchinson v. American Palace-Car Company (C. C.) 104 Fed. 182, 185.

The twenty-third general order in bankruptcy (89 Fed. xi, 32 C. C. A. xxvi) provides that:

"In all orders made by a referee, it shall be recited. according as the fact may be, that notice was given and the manner thereof; or that the order was made by consent; or that no adverse interest was represented at the hearing; or that the order was made after hearing adverse interests."

The referee, in the appointment, disregarded this order. This rule is prescribed by the Supreme Court by authority of section 30 of the act (Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]), and it is the duty of referees to make their orders conform to it.

It has been doubted if a referee is ever justified in appointing a receiver without notice before adjudication. Ross-Meeham Fdry. Co. v. Sou. Car & Fdry. Co. (D. C.) 124 Fed. 403. No principle is more essential to the administration of justice, whether by a referee or a judge, than that no man should be deprived of his property without notice and an opportunity to make his defense. A mistaken notion seems to have grown up in reference to bankruptcy proceedings that they are in some way an exception to this principle. It constantly occurs that applications are made for summary action by referees without any notice whatever to the parties who are in possession of the property sought to be seized. Alderson on Receivers, § 280. The courts should stand firmly against this tendency, and not hesitate to vacate any order of a referee that is violative of this vital principle. If it be conceded that a case may occur where a referee could lawfully appoint a receiver without notice—a question it is not necessary now to decide—he is certainly not authorized to disregard the rule of equity procedure as to notice which controls a chancellor when appointing receivers. Under the well-established rule, a chancellor will not appoint a receiver without notice except in a case of imperious necessity, when the rights of the petitioner can be secured and protected in no other way. It sometimes becomes necessary for the court to act without notice to the defendant, when he has absconded, or is beyond the jurisdiction of the court, or cannot be found, or when there is imminent danger of irreparable injury, or when, by giving notice, the very purpose of the appointment may be rendered nugatory. The rule on the subject is found in many cases, and has often been enforced by this court. These limitations upon the authority to appoint a receiver without notice, to say the least, are controlling when an application to make the appointment is decided by a referee in bankruptcy.

2. We are also required to consider the question whether there is anything in the record, as matter of law, to justify the appointment of a receiver. Aside from the bankruptcy act, the appointment of a receiver is an extraordinary remedy, and is granted with great caution and only in cases of necessity. The court acts with extreme caution, and requires a clear case of right and pressing necessity to induce it to make an appointment. Is the rule less strict as to the appointment of receivers in bankruptcy? The bankruptcy act was framed with the purpose of securing to the creditors a distribution of the bankrupt's estate at a minimum cost. The policy of the act is one of economy, and, to promote this policy, Congress sought to provide against the improvident and unnecessary appointment of receivers. The authority to make the appointment is conferred and limited by the act. There is but one ground stated for the appointment. The act authorizes the appointment of receivers "upon the application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Act July 1, 1898, c. 541, § 2 (3), 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421). The petition to appoint the receiver should allege that the appointment is absolutely necessary for the preservation of the estate, and the facts should be stated either in the sworn petition, or in ac-

companying affidavits showing the necessity. The record falls far short of this rule, both as to averment and proof. Neither the petition, the affidavit accompanying it, the order of appointment, nor other parts of the record show that the appointment was absolutely necessary for the preservation of the estate. In a replication filed in a subsequent proceeding, it is alleged that Faulk & Co. agreed with Steiner and others that the involuntary petition should be filed and a receiver appointed. This feature of the case will be referred to later. It is sufficient at this point to say that the order appointing the receiver does not purport to have been made by consent, and the record nowhere shows such agreement to have been made. We think it appears from the record that the appointment was improvident, and in opposition not only to the form but to the substance of the law. We are of opinion that the District Court erred in refusing to discharge the receiver. A decree will be entered reversing the order of the District Court of December 23, 1907, and vacating the order of the referee appointing the receiver, and the petitioning creditors, on whose motion he was appointed, will be taxed with all the costs and fees of the receivership, when ascertained by the District Court.

3. We come now to consider the decree of the District Court of August 11, 1908. The involuntary petition had been filed; Faulk & Co., the alleged bankrupts, had filed pleas denying insolvency and denying alleged acts of bankruptcy; creditors had been allowed to intervene to oppose the involuntary petition, and they had also filed pleas denying the insolvency of the alleged bankrupts and denying the alleged acts of bankruptcy. A trial by jury had been demanded. To these pleas, the original petitioning creditors, Steiner and others, presented several replications, to the effect, in brief, that, before the involuntary petition was filed, Faulk & Co. had agreed with Steiner and others that it should be filed, that the alleged bankrupts were insolvent, and that a receiver should be appointed. Faulk & Co. demurred to these replications. On the trial, the court made the order in question. The effect of the order was to stop the trial, so that a special referee might inquire into the question whether or not Faulk & Co. had made the agreement alleged in the replications. The referee is also directed to ascertain the costs and expenses of the petitioning creditors in prosecuting the involuntary petition and in having the receiver appointed. This order is attacked by both Faulk & Co., the alleged bankrupts, and the Davis Wagon Company, a creditor intervening in opposition to the involuntary petition. The important question presented by the objections to this order of reference relates to the effect of the alleged agreement that the involuntary petition should be filed and the receiver appointed. If the effect of such agreement— if shown to be made—is not to deprive Faulk & Co., or the creditors intervening in opposition, of the right to object to the appointment of a receiver and to resist the adjudication, then the reference and investigation is useless. The bankruptcy act makes no provision for the appointment of a receiver in bankruptcy by the consent of the alleged bankrupt. The appointment, by the terms of the act, is only authorized when it is absolutely necessary for the preservation of the estate. The involuntary petition is filed on the theory that the alleged bank-

rupt is insolvent; that he has creditors to whom his estate is to be distributed. If this be not true, there is no reason for the appointment of a receiver or for the adjudication. The creditors, therefore, are the parties chiefly interested in avoiding the expenses of an unnecessary receivership. It was not intended, we think, that the bankrupt, by his consent, could remove the limitation of the statute, and authorize the appointment of a receiver where it was not necessary for the preservation of the estate. Provisions of the act for the protection of the bankrupt cannot be waived by him if such provisions also serve to protect the bankrupt's creditors In re Sarsar (D. C.) 9 Am. Bankr. Rep. 576, 120 Fed. 40. In Whelpley v. Erie Ry. Co., 6 Blatchf. 271, Fed. Cas. No. 17,504, it was claimed that a party was estopped by consenting to the appointment of a receiver. Nelson, Circuit Justice, held:

"I do not assent to this view. The company waived the notice which is required by the rules and practice of this court before an injunction can be issued; but the order for the injunction, and for the appointment of a receiver, depended upon the judgment of the judge who granted them. Indeed, I am not prepared to admit that an order for an injunction, or a receiver, can be made in an improper case, even with the consent of both parties, more especially where the rights of third persons may be concerned."

The agreement of the alleged bankrupt that a receiver should be appointed—if such agreement has been made—should not, under the circumstances, be permitted to affect the rights of opposing creditors (Scott v. Hotchkiss, 115 Cal. 89, 47 Pac. 45; Beach on Receivers, § 49; Alderson on Receivers, § 51); nor should such appointment, when not authorized by law, be permitted to delay or affect the trial of the issues between the creditors filing the involuntary petition and the intervening and opposing creditors.

That part of the order of August 11, 1908, which sustains the demurrer of T. S. Faulk & Co. to certain replications is affirmed; the remainder of said order is reversed.