## In re AMERICAN BOND & MORTGAGE CO., Inc.

District Court, D. Maine, S. D.

May 26, 1931.

Verrill, Hale, Booth & Ives, of Portland, Me., and Defrees, Buckingham, Jones & Hoffman, of Chicago, Ill., for bankrupt.

Skillin, Dyer & Payson, of Portland, Me. (Selden Bacon and Saul S. Myers, both of New York City, of counsel), for petitioner.

Cook, Hutchinson, Pierce & Connell, of Portland, Me., and Cassels, Potter & Bentley, of Chicago, Ill., for committee of debenture bondholders.

PETERS, District Judge.

On May 25th an involuntary petition in bankruptcy was filed in this district against the American Bond & Mortgage Company. Simultaneously there was filed a petition by a creditor for the appointment of receivers The alleged bankrupt, although having a domicile in Maine by reason of its incorporation here, appears to have no assets or business in the state, so that the actual duties of a receiver appointed by this court would be nominal; but, as it was expected that any appointment here would be immediately followed by applications for ancillary receiverships in other jurisdictions, and as a receivership here under the circumstances would be merely opening a door to active receiverships elsewhere, the matter is considered from the standpoint of the necessity for receiverships in these other jurisdictions.

The receivership asked for is a temporary receivership pending adjudication, which is a different matter from a receivership after adjudication. To take possession of the property of an individual who has not been, and may never be, adjudged a bankrupt, is a drastic and arbitrary proceeding, which requires the exercise of great caution. The law gives authority for such a step only when imperatively required for the immediate preservation of assets and to prevent a possible loss to creditors which can be prevented in no other reasonable way. The boundary of the authority is very definite. Section 2 (3) of the Bankruptcy Act (11 USCA § 11 (3), says that the court may "appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified."

After adjudication, the property coming within the authority of the court for distribution among creditors can properly be the subject of administration through a receiver. Before adjudication, a receiver is primarily a custodian appointed in very special cases to save assets from dissipation. It is not necessary to make an elaborate compendium of authorities, which are numerous and well known. In re Oakland Lumber Co., 174 F. 634, 636 (C. C. A. N. Y.);

In re Hine-Watt Mfg. Co. (C. C. A.) 290 F. 902; Clark v. Huckaby (C. C. A.) 28 F. (2d) 154, 67 A. L. R. 1456.

"The power to take from a man his property, without giving him an opportunity to be heard, is both arbitrary and drastic and should not be exercised except in the clearest cases. Congress recognized the necessity for caution by limiting the appointment of receivers to cases where it is 'absolutely necessary' for the preservation of the estate. In other words the reason for such an interference with the rights of property must be clear, positive and certain. Of course cases frequently arise where this remedy may be necessary—cases where there is reason to believe that the property may be stolen or secreted or turned over to favored creditors. But fraud cannot be presumed, neither can danger to the property be predicated of acts which are honest and lawful. It cannot be presumed that an assignee under a state law intends to plunder the fund he is appointed to administer. Unless something be shown to the contrary the presumption is persuasive that during the interval between the filing of the petition and the appointment of a trustee, the property will be entirely safe in the hands of the assignee especially if he be enjoined from disposing of it pendente lite." In re Oakland Lumber Co., supra.

"A temporary receiver of a bankrupt is merely a custodian of the estate, with authority to inventory and receive and retain all of the bankrupt's assets; the purpose of his appointment being only to protect the property from dissipation and loss until it is ascertained that there is a bankrupt's estate to be administered."

The above is a headnote followed by many citations in the United States Code, title 11, § 11, p. 123.

"Even consent of the bankrupt to the appointment of a receiver would not authorize the court to do so in the absence of a situation clearly described by the Statute." Faulk & Co. v. Steiner (C. C. A.) 165 F. 861.

"A receiver appointed for the preservation of a bankrupt's estate under authority of Paragraph 2 (3) becomes a mere custodian until the question of bankruptcy is adjudicated. He may take custody of whatever is plainly the property of the bankrupt and against which no third party makes any claim with color of title. He takes no title to the property. After adjudication the receiver is no longer a mere custodian of property which may be returned to the alleged bankrupt, but of property which is then in the course of administration." Gilbert's Collier on Bankruptcy, page 50.

At the hearing on the petition, the alleged bankrupt appeared by attorney and objected. Attorneys for a committee of debenture bondholders representing, as was stated, 85 per cent. of an issue of about $5,000,000—which, apparently, is unsecured indebtedness, and which appears to be a large part of the total unsecured indebtedness—also appeared and objected to the appointment of a receiver.

The petition is extremely voluminous, and goes largely into the history of the transactions of the alleged bankrupt in recent years, which have been quite extensive. Its principal business was the negotiation of mortgage bonds or other securities based on real property owned by other corporations or individuals. Bond issues of millions of dollars were underwritten and floated by the company. Overvaluation of real estate or depreciation thereof, coupled perhaps with the inclination of investors to purchase common stocks in 1929, resulted in embarrassment to the companies issuing these securities and to the American Bond & Mortgage Company which had tried to postpone the disclosure of a default of various bond issues by taking up bonds as they came due. At any rate, in the fall of 1929 the situation apparently demanded action by creditors, and a committee was appointed to protect their interests. It is unnecessary to go into details of specific transactions in which this company became involved, beyond summarizing some of the situations set forth in the petition, which are alleged to constitute reasons and to show the absolute necessity for the appointment of a temporary receiver before adjudication.

It is alleged that a bond issue of $1,500,000 on the Libby Hotel in New York, which was floated by the alleged bankrupt in 1924, defaulted in part in 1927, and as bonds became due the alleged bankrupt (which will be hereafter referred to as the company) took up some of them, and afterwards sold such bonds as it had bought to another corporation called American Mortgage Loan Company, which was probably affiliated with the American Bond & Mortgage Company, and all of the stock of which, as stated in the petition, "was presumed to be owned by said American Bond."

This company was unable to prevent further default in the bonds of the hotel company, and eventually the trustee under the bond issue obtained a foreclosure judgment,

the property was sold under foreclosure in New York in 1929, and bid in by a person who is alleged in the petition to have been assistant secretary of the American Mortgage Loan Company. The amount of the bid on the foreclosure sale was $75,000.

It is alleged that the purchaser at this sale caused the deed to be made in the name of another person, a woman alleged to be a clerk in the office of attorneys for the company, who still holds the title, subject to the bond issue.

It is further alleged that, after this property was sold under foreclosure, on account of default in a part of the issue of $1,500,000 bonds covering it, it was taken under eminent domain proceedings by New York City, and that a judge of the Supreme Court of New York awarded the owners of the property, as damages, the sum of $2,850,000, of which amount approximately $1,500,000 would be due the first mortgage bondholders, leaving a balance of something like $1,000,000, after payment of taxes and expenses, to go to the owner of the equity of redemption.

The petitioner further states the belief "that the City of New York is about to pay out the award under the said condemnation proceedings and that unless a receiver is immediately put in possession of the assets of this estate, the money will be collected by the said Mary J. Lyons and payment thereof directly to the American Bond treasury may not be reasonably looked for; but the same having been already so concealed is in danger of being improperly distributed."

The very statement of the situation, coupled with a consideration of the purpose and function of a temporary receiver before adjudication in bankruptcy, shows that the statute does not authorize the appointment of a receiver in such circumstances. The property in question appears to be about $1,000,000 in the treasury of the City of New York, payable on the face of it to a person who had title to the real estate condemned. Obviously the city of New York will not pay this to a third party, a receiver of the American Bond & Mortgage Company, until the conclusion of proceedings showing his right thereto. It is not the function of a custodian receiver before adjudication to bring such proceedings, nor would the court order it except, perhaps, in a case of imperative necessity not here present. It appears from other documents brought to my attention by counsel for the petitioner that an appeal has been taken from the judgment of the court making the award of damages in the case of the Libby Hotel—so there is apparently no immediate danger of the city's paying over this large sum of money to the wrong person, as feared by the petitioner. If on final decision later this money becomes payable, and if a trustee, or receiver, after adjudication, should be appointed in this case, it would be his duty to take proper proceedings to protect the interest of the estate, if any, in this fund. The allegations in the petition are rather vague as to the interest of the American Bond & Mortgage Company in the fund, being based on the language used above wherein the petition says it is "presumed" that the alleged bankrupt owns the control of the hotel company. However that may be, if it is a fact, other evidence could be obtained. The point is, that the allegations are only sufficient to lay the foundation for further proceedings at the proper time.

It should be noted here that the affairs of this company are now being managed by a committee with whom has been deposited the stock of the corporation, and who have control of it in the interest of creditors. This committee has at least one of its members in New York City, and the committee as a whole is thus described by Chief Justice Pattangall, of Maine, before whom was brought a petition for an equity receivership of this same corporation, and who, after a hearing lasting several weeks, postponed consideration of the matter in the hope that the committee would be able to perfect some reorganization. He uses this language: "The personnel of these committees is beyond criticism. The reorganization has proceeded far enough to place the control and executive management of the corporation in the hands of men of unquestioned ability and integrity. Until they have had a fair opportunity to work out the problems which confront them, and their ability or inability to solve these problems has been demonstrated, it would be manifestly unwise to interrupt their work. * * * Arrangements have also been made so that counsel agreeable to all of the parties concerned and approved by the Court will participate in the work of the voting trustees, which at present controls the corporation."

The committee, or committees, referred to, consisted, according to the testimony before Judge Pattangall, of business men and bankers of the highest standing, of whom it would be impossible to believe that $1,000,000 belonging to the corporation, in the hands of the city of New York, would be permitted to go astray and not reach its proper

destination, without taking all measures that a receiver could take to protect the interests of the corporation. In addition to this, it appears that receivers of this alleged bankrupt in an equity proceeding in Illinois, appointed by United States District Judge Wilkerson, have applied in New York for an ancillary appointment in order to conserve the assets of the company in New York. I am advised that this ancillary appointment will probably be made, in which case the assets will receive still further protection.

Also, while this opinion was being prepared, evidence in the form of a telegram has been presented to me through counsel to the effect that the woman in whose name title to the equity of redemption of the Libby Hotel stands—who would on the face of it be entitled to the money paid by the condemnation proceedings—more than a year ago executed a written assignment of the award of damages to the American Bond & Mortgage Company, which assignment is now in the possession of the attorney for that company in New York.

The fear of the petitioner that the alleged bankrupt will be deprived of its interest in this fund, unless a receiver is appointed by this court forthwith, now appears to be without foundation. At any rate, there is no warrant of authority for the appointment of a custodian receiver under the circumstances, and nothing for him to do if he were appointed, especially in view of the fact that evidence of the equitable interest of the alleged bankrupt in the condemnation fund is now available. It is not to be assumed that the money will be paid to persons not entitled to it or that the competent persons now in charge of the affairs of the company in the interest of creditors will fail in their duty or lack diligence in protecting its interests.

As another reason for the immediate appointment of a receiver, it is urged that the Mayflower Hotel in Washington, subject to heavy mortgages securing bonds which the alleged bankrupt has floated, and which is owned by one corporation and managed by another, stock in both of which is owned by the American Bond & Mortgage Company, is in a bad way financially, and is under the control of the former president of the company, and that a history of the financing of this property "shows that not only have the best interests of the bondholders not been advanced, but also that the interests of the American Bond have likewise been discriminated against, to the personal benefit of the

Moores and their associates"; and also "that the equitable ownership of this property, subject to the bonds, was seriously affected by default in the second mortgage bond issue and that in the event of a foreclosure under said mortgage the equity will be entirely wiped out." It is also alleged that the principal receivers of this corporation, appointed in the equity proceeding before Judge Wilkerson of Chicago, have threatened to take possession of the Mayflower Hotel.

It is apparent that in this situation a temporary receiver appointed by the court could do nothing in the way of taking possession of the assets involved, nor would he have any right to do so at the present time, as the hotel itself is owned by a corporation, a stock interest only in which is among the assets of the alleged bankrupt.

The numerous other situations, unfortunate from a financial point of view, presented in detail in the petition, present in general a similar situation, but not one authorizing or justifyng the appointment of a temporary receiver at this time.

Another consideration of controlling importance has not been mentioned. Prior to the involuntary petition in bankruptcy filed in Maine, an involuntary petition was filed in Chicago, and is pending there. There is also pending there an application for the appointment of a temporary receiver. As previously mentioned, there is also pending the equity receivership in which receivers were appointed. As to whether the final administration of this estate shall be in Maine, the domicile of the alleged bankrupt, or in Chicago, where it is alleged to have been doing business, is a matter for later and separate determination, and which involves considerations foreign to this matter of receivership. To appoint a temporary receiver here, with an application for one pending in Chicago, and receivers actually appointed and acting under the equity proceedings in Chicago, would simply be adding to the confusion and complications of this unfortunate case, and would be entirely unjustified.

The commendable desire of the petitioner to preserve the assets of the estate, in case of adjudication, has led it in its zeal to seek protection with unnecessary measures at the present time. It is quite obvious that the assets of the company are under the management and in the hands either of reliable committees representing creditors, or of agencies responsible to other courts, or are in such a situation that there is no immediate danger of dissipation. If any other situa-

tion develops showing danger of irreparable loss, application can be made to this or some other court interested in the proceedings to remedy the situation, and a receiver, or other custodian, if necessary, could be appointed. At the moment, however, it is clear that the situation called for by the statute is not present, and that this court at the present time cannot properly appoint a receiver, although the matter has been urged with great earnestness and ability by counsel representing the petitioner.

The petition must be dismissed without prejudice to a renewal of the application at a later date in case it is deemed necessary.